Totten, J.,
delivered the opinion of the court.
Mary Eaves filed her bill in chancery, at Cleveland, against *129 Robert N. Gillespie, to recover the possession of several negro slaves, sold by her late husband, Thomas Eaves, to the defendant, and of which she claims to be the owner.
It appears, that on the 15th November, 1807, in Union District, South Carolina, Mary Johns, the plaintiff, intermarried with Thomas Eaves, and that “shortly” after this marriage, Jesse Johns, the father of plaintiff, gave and delivered to her a negro slave, named Isabella. This gift occurred in Union District, where all the parties then resided. About 1822, Thomas Eaves removed from South Carolina to Rhea county, Tennessee, where, on the 6th November, 1834, as appears by his bill of sale, he sold and delivered to defendant, at the price of twelve hundred dollars, the slave Isabella and her children, George, Mary, Jane and Nick, the slaves in controversy. The slave Isabella, from the time of the gift, and her children, from the time of their birth, remained in possession of Thomas Eaves and Mary, his wife, until the sale to defendant, at which time they went into defendant’s possession, who has since held them in virtue of his said purchase. Thomas Eaves died in 1848, and thereupon the plaintiff brings her suit, alledging that the gift by her father, Jesse Johns, of the slave Isabella, was to the sole and separate use of her, the said Mary, and not subject to the marital rights of her husband, — that her right to the slaves was generally known, and known to defendant. The answer denies her right, and there is no proof that defendant had any information of her claim at the time he purchased the slaves.
The gift was in parol, and is proved by two witnesses, brothers of the plaintiff, who were present at the time.
William Johns says: “The slave Isabella belonged to my father, Jesse Johns, and he gave her and her increase to Mary Eaves and her heirs, if any; and not to Eaves to dispose of at all, for Eaves would spend her if he had it in his power.”
Thomas Johns savs: “I was present when Jesse Johns dis *130 posed of Isabella. He, took her by the hand and gave her to Mary Eaves and her increase.” Such are the terms of the gift as stated by the witnesses. They further state,- that Thomas Eaves was present, and that Jesse Johns said he had no negroes to give to him, and that Thomas Eaves was dissatisfied with the manner of the gift.
1. It is insisted in defence, that the gift being in parol, should be considered as merely void. In our own State, a vei’bal gift of a slave is made void, by statute, and it is construed as void, not only as to creditors and subsequent purchasers, but also, as to the parties to the gift. Act 1831, ch. 90, sec. 12. Neely rs. Wood, 10 Yerg. R., 488. Crippen vs. Bearden, 5 Humph. R. 131.
But as the gift in question was made in South Carolina, it will be governed and construed by the lex loci, and if valid there, it will be held and deemed as valid here.
We are not advised that any statute law of that State requires such gift to be by deed or writing. We are, therefore, to consider the case as at the common law. By that law, a verbal gift of a chattel, and delivery of possession, will have the effect to transfer the legal title to the donee. And as property in a slave is but a chattel interest, the same principle will apply to the gift of a slave. The verbal gift to the plaintiff was, therefore, valid, and had the effect to invest her with the title to the slave. Nor do we see any reason why the gift, if valid, may not be for the sole and separate use of the wife, if that were the intention of the donor. The verbal gift being valid, the use declared will be valid likewise. It may be for her use without any restriction as to the right of her husband, or for her sole and separate use, and this latter use will be enforced by a court of equity.
2. But do the terms of the gift imply, that it was for the separate use of the wife?
In Thompson vs. McKissick, 3 Humph. R., 633, Green, J., *131 In delivering the opinion, says: “The intention must distinctly appear by the use of expressions that plainly denote an. exclusion of the husband, or a direction as to the enjoyment of the property incompatible with his dominion over it.” So in Tyler vs. Lake, 2 R. & M., 189, Brougham, Chancellor, said: “The expressions must be such as leave no doubt of the intention, and which forbid the court to speculate on what the probable object of the donor might have been.” See Hill on Trustees, 420, where the cases are collected, and in view of them, the [author expresses the opinion," that in modern times, the judges have required much more stringent expressions for this purpose, than were once considered sufficient. Thus, a trust to pay an annuity to a married woman “for her use and benefit”; or “into her own proper hands for her use and benefit,” will not create a trust for her separate use. Hill on Trustees, 421.
Now the gift is “to Mary Eaves and her heirs, if any, and •not to Eaves to dispose of at all, for Eaves would spend her if .he had it in his power.” The other witness says, the donor “took the slave by the hand and gave her to Mary Eaves and her increase.”
It is certain that Mary Eaves acquired an absolute right to the slave: that is the effect of the words employed, and it was the probable intention of the donor. But did that right remain to her separate use, or was it taken from her by the marital right of her husband? That depends upon the intention of the testator, as it appears in the terms of the gift. The gift contains no expressions from which it may clearly appear that the donor intended a separate use, to the exclusion of the rights of the husband. It is probable, that the expression, “not to Eaves to dispose of, for he would spend it, if he had.it in his power,” is not the language of the donor, but of the witness, stating his understanding of the nature and effect of the gift. And this conclusion is favcred by the state *132 ment of the other witness, who says, the donor “took the slave by the hand and gave her to Mary Eaves and her increase.” The first witness states a motive, which might have induced the donor to make the gift to the separate use of the wife; but the other witness does not state that the gift was so made. We are, therefore, left to “speculate on what the probable objects of the donor might have been” in this respect and we have seen that in such case, the claim to the separate use cannot prevail.
We may further observe, that although a gift to the separate use of the wife, may be valid, without the interposition of a trustee, as the husband in that case, shall be the trustee; yet, where the intention is at all doubtful, the failure to appoint a trustee, is an argument in favor of the marital right. This right, founded in wisdom and policy, and exercising a most happy influence upon the social relations,is a fixed and stable right of the common law; and unless the intention to displace it, be perfectly manifest, it should be allowed to have its full effect.
3. If, however, it were conceded, that the legal effect of the gift is such as to make the husband a trustee for the wife; still, in the circumstances of the case, the plaintiff is not entitled to a decree in her favor.
The case is one of a bona fide sale and delivery by the trustee to defendant, upon valuable consideration, and without notice of the trust. The defendant became thereby invested with the legal title, and his equity being equal to that of the cestui que trust, his right cannot be disturbed either at law or in equity.
In such case, the cestui que trust cannot pursue the property or fund, for it has become divested of the trust; and the recourse for indemnity, must necessarily be upon the trustee for a breach of the trust. Hill on Trustees, 510; Finch vs. *133 Earl of Winchelsea, 1 P. Wms., 278; Cruis. Dig. Tit. 12, ch. 4, sec. 12.
The decree of the Chancellor, dismissing the bill, will be affirmed with costs.