Martin *v.* Lincoln.

HUGH MARTIN et als *v.* G. W. LINCOLN et al.

HUSBAND AND WIFE. *Parol trust will not defeat creditors, when.* .If a husband conveys his land, by deed absolute on its face, to another person without consideration, with an intention, subsequently made known to the conveyee, that he shall hold the land for the benefit of the wife of the conveyor, such parol trust cannot be set up against creditors of the husband. To defeat the creditors, there must be a deed or declaration of trust registered or noted for registration, as required by law.

## FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

T. B. TURLEY and W. M. SMITH for Complainants.

W. H. CARROLL and W. D. BEARD for Defendants.

FREEMAN, J., delivered the opinion of the Court.

On 29th of April, 1861, George W. Lincoln purchased the property in controversy on Madison street, in the city of Memphis, of J. W. Rodgers. The price seems to have been between thirty-five and forty thousand dollars, which was paid by said Lincoln. He caused a deed to be made to the same to his brother-in-law, D. C. Love, who resided in the city of Nashville, the same

being soon after registered in the county of Shelby. This deed simply conveyed the legal title absolutely to said Love. It is claimed to have been intended as a settlement by Lincoln upon his wife, Mary A. Lincoln, and that at some time after it was made, the trusts in favor of the wife were made known to said Love, and he consented to hold the same for the use and benefit of the wife. The precise time when this trust was so made known is not clearly shown in these records.

It is further claimed that Love, in September, 1864, executed an instrument acknowledging this trust to the said Mary A.

In addition, it is argued that in several answers to bills filed in other cases, and in the answer to the present bills, he acknowledged the trust, and that in some one of these ways the trust is sufficiently manifested, and so definitely made out as to be valid, and enforceable as between her and the creditors of her husband, seeking to enforce their debts in this proceeding.

These bills are filed by creditors of G. W. Lincoln, in 1865, seeking to make this lot in Memphis liable for their debts.

The theory on which most, if not all of them, go in the main, is, that the conveyance was made to Love directly, and assuming that he held the property in trust for Mrs. Lincoln; that it was but a voluntary conveyance to her, and that G. W. Lincoln was not in condition to make such a settlement on his wife, and, therefore, such

Martin *v.* Lincoln.

conveyance. was fraudulent and void, as to existing creditors at least; and, in addition, it is also charged that it was part of a meditated scheme of fraud by which he conveyed his property to his brother-in-law for the benefit of his wife, with the purpose of thus covering it up, and preventing such creditors from reaching it; and being fraudulent in fact, as to existing creditors, is thought to be alike void as to subsequent creditors, after the registration of the conveyance.

As to the first proposition, that the conveyance was voluntary, and not enough means reserved to meet existing liabilities, after careful examination of the proof in these cases, we do not think it is sustained. It is not deemed necessary to go into the testimony to sustain this conclusion. It is sufficient to say that we think the evidence abundantly· shows that he was *able* to meet any obligation shown against him, whether individual or as security for others up to the time of occupation of Memphis by the Federal forces, in June, 1862. In fact, the weight of the testimony would show that he so continued after his removal to Nashville, in 1863, perhaps, and until some time in the year 1864, when his banking business was broken up, and his bank suspended, caused by the failure of Kirtland & Co., of New York. The fact that one of these debts now sued on, a security debt, existed before the conveyance, cannot change this view.

We must . test this matter by the state of

things existent at the time it was made, and not by after events occurring during the perilous times of the war, when fortunes, as we know, were made and lost in a day, as the result of the changing fortunes of the strife.

As to the question of fraud in fact, we find some circumstances of suspicion on the face of the transaction, but not of sufficient weight to say that this charge is sustained.

The gravest inference in this direction is to be drawn from the conveyance having been made to Love, with no declaration of the assumed trust expressed in the face of the deed, and the fact that he knew nothing of the conveyance or purpose for some time after it was made—possibly not until September, 1864—when he executed the paper, claimed to have been a declaration or recognition of the trust. This paper will be noticed more particularly hereafter.

It is assumed to have been conveyed to Love with a parol trust for the benefit of the wife, and thus intended as a settlement. If he reserved ample means, as we think he did, to meet his liabilities, we can see no evidence in the facts shown in this record from which we can infer a purpose to defraud any existent creditors, nor to provide against future liabilities in contemplation of insolvency, in such way as to deceive those who might trust him. In this view, it was but the prudent precaution of a husband against future contingencies, such as may exist in every case

where such a settlement is made on a wife or
child by the husband or father. He had been
advised by a friend in whom he seems to have
reposed much confidence, thus to secure property
to his wife and daughters; and probably the con-
veyance was made in persuance of this advice.

The case then presented, and the question to
be decided is, whether, as against creditors of the
conveyor, seeking to enforce debts, a conveyance
without consideration, to another, absolute on its
face, but with an intention, subsequently made
known to the conveyee, that he shall hold the
land so conveyed for the benefit of the conveyor's
wife, can give the wife the right to hold the land
as against such creditors? Or it may be more
shortly stated, whether such a parol trust in favor
of the wife, can be set up as against the credit-
ors of the husband, in land conveyed by the hus-
band to another for her benefit.

We think this the real question, and that it is
fairly raised on the facts stated in the bills, as
well as those stated in the answer, though not
made the theory of the bills, in which such facts
are stated. The principle laid down by this court
in *Bartee* **v.** *Tompkins*, 4 Sneed, 638–9, that where
the facts are stated in the pleadings, though the
ground relied on in the theory of the relief
sought, is not sustained; yet, under the general
prayer, relief may be granted, such as the facts
stated in the pleadings and shown to exist, will
justify, we think, applies in this case.

The fact of the conveyance to Love, absolute on its face, with the claim of a parol trust in favor of the wife, is found substantial, given in all the bills, and is the distinct basis of the claim asserted by the wife in her answers.

It is also insisted that the instrument executed by Love, 23rd September, 1864, is a manifestation and declaration of the trust in writing, and we had as well dispose of this matter at this point, as anywhere else.

On looking at this instrument, we find it is, so far as its material terms are concerned, as follows: "In consideration of one dollar to me in hand paid, I hereby agree to make, or cause to be made, to Mary A. Lincoln, or her trustee, a quit claim deed for the following described lot: (giving a description of the same) in conclusion reciting that it is the same conveyed by and for J. W. Rodgers to him, the 29th of April, 1861, and registered in Shelby county."

So far from this sustaining the idea of a trust, or being a declaration of the trust in favor of Mrs. Lincoln, it goes far to raise a suspicion as to the existence of the trust now claimed to have been the original object of the conveyance, or any knowledge of it, at least, on the part of Love at this time.

In the first place, if he held under the trust, as claimed, why not execute a declaration of said trust, and thus furnish the evidence of that which had already been declared in parol?

Why contract to convey to her or her trustee, if he was already that trustee, with the legal title in him for her benefit, as is the theory of respondent in her answer?

It might well be doubted, assuming that he was a trustee, and the parol trust valid, whether he could convey to a third party or to the beneficiary the legal title thus vested in him, and thus denude himself of the trust, no authority being pretended to this effect in the declaration of the trust originally.

Suppose the conveyance had expressed the trusts now claimed on its face, would not such a trustee be vested with the legal title, charged with the trust, so that he could not have denuded himself of it without a breach of duty, except by death or authority of a court of Chancery, or other courts having authority to receive his resignation and pass his accounts, and appoint a successor to act in his stead?

This being so, certainly a party holding the legal title, with a parol declaration of the trust, (assuming its validity for the present), would have no more authority to denude himself of the trust, or convey to another, thus appointing another trustee, than in the case of a trustee where the declaration of the trust was in writing. See Perry on Trusts, vol. 1, sec. 77. This instrument is but a contract on its face to convey, and if what we have suggested is true, it is a contract that would be a breach of trust to execute.

Martin *v.* Lincoln.

But, passing from this, it does not even allude to the trust in any way, nor declare its terms. If it had been intended so to do, it would have recited the fact, that the conveyance to him had been made in trust for the benefit of Mrs. Lincoln, and that he thus held it.

The failure to make the slightest reference to the trust, is conclusive against the assumption that this can be held a declaration of the trust sought to be set up by respondent.

In addition, it is axiomatic in all cases where a trust is to be enforced, whether in writing or by parol, that it shall be clearly defined; or, to use the language of Mr. Bispham, Prin. of Eq., p. 97, in reference to trusts in writing, "The writing, however, must declare, with sufficient certainty, what the trust is." This would only be held, as a voluntary agreement on its face, to convey to Mrs. Lincoln, Love being the holder of the legal title without consideration, the purchase money having been paid by Lincoln. Nothing more appearing, it would be the same as Lincoln making this contract at this time, and it is clear, at this time, he was not in condition to have made such a settlement on his wife.

Resort must be had to the parol trust, if this trust can be sustained. As to the answers of Love and Lincoln relied on, we need but say they are after the rights of complainants sprang up, and cannot be interposed to affect them, even if otherwise good, which we need not decide.

---

---

In addition, the trust must stand on the declaration made prior, or at the time of the conveyance: Perry on Trusts, sec. 77. Resort must be had to the assumed parol declaration of the trust, and it must stand or fall on this.

The question then is, whether the parol trust sought to be set up, under the facts of this case, can be sustained as against creditors of the husband? The question as to whether it could be enforced against Lincoln, the maker or conveyor, is not before us, and not necessary to be discussed or decided.

This precise question, we do not think, has been adjudged in our State. We have various cases where trusts have been recognized and enforced, made out by parol proof, as between the party claiming the beneficial interest and the conveyee of the legal title; but the question as between a creditor of the maker of the conveyance, and the claimant under such parol agreement for a trust, was not in these cases.

In the case of *Saunders* v. *Harris,* Judge Cooper delivering the opinion of the Court, refers to it as a question not necessary to be decided, and it was not discussed. It is evident, however, he saw there were difficulties in the question, but the case not calling for it, did not decide it.

It is claimed in argument that the principle settled by our cases, sustains the contention of respondent in this case.

We proceed to notice the leading cases decided

by this Court, and ascertain their bearing on the question. It is several times stated in opinions *arguendo*, that a parol trust may be established, as to lands, as well as to personalty. Such is the language of Judge Cooper in the Saunders case; but it was not so decided, only an incidental remark, the case being one of a trust in slaves, that had always been treated as personalty, and the rules of law applicable to personalty applied to them.

It is proper to say here, that it is a very different question, as between a party accepting the legal title, with a verbal agreement to hold for the use of another, when that third party asks the enforcement of the trust, as against him, from the one presented in this case, when a creditor comes with his execution or a bill, seeking to subject the property to the payment of his debt. The principle and policy of our registration laws must necessarily have an important bearing in the solution of such a question.

The first case, and the leading one, we believe, on the general question is *McClanahan* v. *McClanahan*, 6 Hum., 99. A father conveyed lands to his son, the son being bound for him as surety, and also a creditor. The father was indebted to others. The father was old, infirm, of intemperate habits, and disqualified from judicious attention to his affairs. The son took the title, with the understanding that he should indemnify himself for debts and liabilities, pay the other debts of his

father, and by this means save a home for the
benefit of the family of the grantor. Soon after
this the grantor died; the son paid off his debts,
selling a portion of the land for this purpose,
using means of his own also in paying the debts.
The widow and heirs filed their bill to be restored
to the possession of the land. The defendant ad-
mitted the trust in the answer, and submitted to
an account. The Court held he was a mortgagee
as to liabilities existent at the time of the convey-
ance, and trustee as to the balance, and decreed,
after he should be reimbursed, the title should go
to complainants. This case does not raise the
question now before us, nor is the question of
enforcing a parol trust, where it is insisted, for
this cause, raised for decision in this case. The
answer, as we have said, admitted the trust, and
consented to the account. This case, on its facts,
may well stand as the law, but gives no aid to
the position maintained in the case now before us.

The case of *Haywood* v. *Ensley*, 8 Hum., 459,
where a party, whose land was about to be sold,
procured Ensley to purchase it, with an agreement
that he would hold the land as security for the
money advanced, and when this was repaid, the
owners were to have it. The party, by this ar-
rangement, prevented others from bidding, as well
as the procurement, probably, of some other per-
son to buy the land, and allow it to be redeemed.
So that the element of a fraudulent advantage,
as well as the agreement, was in this case,

Martin *v.* Lincoln.

The Judge delivering the opinion says, it is true in that case, that the jurisdiction of a court of equity to enforce the execution of a trust, declared by parol in land, if plain, and unambiguous in terms, and established by clear and satisfactory evidence, is well established, and was admitted by counsel in argument, but this must be understood as applying to the case before the Court, and in view of the facts, the statement was correct. In fact, it was held to be a case of mortgage, the conveyance of the legal title being shown to have been as security for the money advanced by parol, in accord with numerous cases in our State. This is shown by the decree, as well as the prayer of the bill, which was to redeem, have an account of the rents and profits, which was ordered by the Court. This case was decided correctly, and we feel no disposition to disturb its authority, however much the writer of this opinion might himself doubt the soundness, as others of our Judges have done, of the propriety of this departure from the rule requiring titles to land to be in writing. But it is obvious this case does not meet the question we have now before us. The contest was between the parties to the agreement. The holder of the legal title had obtained a legal advantage by agreeing to permit the redemption, and it would have been a gross fraud if he had been allowed to retain this unconscientious advantage, as against parties who had reposed confidence in him. Suffice it to say no creditor was seeking

to enforce his claim against the creator of the trust, as in this case.

These are the leading cases, and we believe the only ones where the trust was declared in real estate. They all have the element of fraudulent advantage, obtained by the holder of the legal title, making it fraudulent and iniquitous in him to seek to retain it.

The other cases are generally cases of conveyances of legal titles with parol agreement to hold as security for payment of money advanced, and the bills were to redeem. This doctrine is now well settled in our law, and need not be discussed. They were also cases of negroes, and, therefore, personal property.

None of them were cases where a creditor was seeking to reach the property, while the legal title was in the voluntary conveyee, and an assertion of claim by an assumed beneficiary by proof of a parol declaration of trust, made either at the time of the conveyance, or subsequent to it, as in this case. See the cases of *Saunders* v. *Harris*, 1 Head, 185; *English* v. *Tomlinson*, 8 Hum., 378; 10 Hum., 349.

We need not refer to other cases, such as the case of *McClellan* v. *McLean*, 2 Head, 687, and the cases there referred to, where a party agrees, that if property is given by will, that he will give it to such persons as are designated by the testator as the objects of his bounty. All these cases stand on the ground of fraudulent advantage,

and the Court enforces them in favor of the beneficiaries.   This is all well established.

Let us now come to the case before us.   The party making the conveyance, or causing it to be made, is the debtor.   It is made to Love without consideration.   Assume that he agreed to hold it for her, and this proven by parol, and that, under the above cases, she might, as against him, on the ground of it being a fraud and an iniquitous advantage, compel him to hold the title for her, and at any rate he would be estopped from resisting her claim as against him.   How stands the right of the creditor against this claim ? In the view we take of this question, we need scarcely go into the vexed question, whether an express trust, such as the one now before us, could be created or raised in parol at common law.   It is true, the seventh section of the Statute of Frauds, 29 Charles II., is not embodied in our statute.   This section required that "all declarations or creations of trusts or confidences in any lands, tenements or hereditaments, shall be manifested and proved by some writing, signed by the party who is by law to declare such trust, or by his last will in writing."   We need but say, that we think, from the authorities we have examined, that this was a vexed and unsettled question, at the date of the statute.

Mr. Perry, in his work on 'Trusts, vol. 1, second edition, sec. 75, refers to several text writers, such as Saunders and Lewin, who are cited as say-

ing that uses being of a secret nature, were usually created by parol declaration, and trusts, like usages, were averable at common law, and might be declared by word of mouth, without writing. He cites Chief Baron Gilbert, however, as reconciling most of the conflicting authorities by saying: "At common law a use might have been raised by words upon a conveyance that passed the possession by some solemn act, as a feaffment; but where there was no such act, then it seems a deed declaration of the use was necessary; for as a feaffment might be made at common law, by parol, so might the uses be declared by parol. But where a deed was necessary for passing the estate itself, it was also requisite for the declaration of the uses. Thus a man could not covenant to stand seized to uses without a deed; but a bargain and sale, by parol, has raised a use."

It is probable the weight of authority is in favor of this view, and such, because the rule of an early day, though originally, when the feoffment was the almost universal mode of conveyance, it was understood that no writing was necessary, there being but little writing in England in those early days, as we know from the history of her people.

In this view, the seventh section, we take it, is to be held as passed rather to settle this disputed question, than as furnishing reason for the inference that the law had been settled otherwise, and it required the statute to change it

But passing from this to the question before·us. We take it to be settled by the policy of our registration system, from its inception down to the present time, that creditors and innocent purchasers, (that is, purchasers without notice,) stand on the same footing as to all lands owned by their debtor. Sections 2074-2075 of our Code embody these principles distinctly. The principle of the latter section, as to all estates subject to execution or other proceeding for enforcing debts is, that they shall be subject to the claims of a creditor of the grantor, unless defeated by a conveyance or instrument in writing, proved or acknowledged, and noted for registration or registered, and a *bona fide* purchaser, who gets a conveyance first, and has it registered, prevails over another less diligent.

If this be correct, we need hardly say that a purchaser from Love, without notice, who paid his money and procured a conveyance in writing, and had the same registered, would get the title over a trust like this, even if it is conceded it is well declared by parol. See cases cited, King's Digest, vol. 4, sec. 11, 655. If this be so, on what principle a creditor can be made to stand lower than a purchaser, it would be difficult to see.

But further. The estate conveyed to Love, Lincoln paying the consideration, nothing more appearing, and as the conveyance stood on the Register's books, on the facts stated, was an estate subject to execution at law, the judgment against

Lincoln would be a lien on the land thus con-
veyed: 1 Hum., 491; 6 Hum., 95–6. This being
so, if the principle of these statutes are to be
carried out, how can the creditor be overridden,
except by a conveyance, complying with the rule
thus established? It is a legal estate, subject to
execution or other process by a creditor. It can
only, then, in fairness, be defeated by a convey-
ance, noted or registered, as the statute required.
On what principle can we make a distinction, in
favor of a party claiming the beneficial interest?
It is the assertion of an unregistered title against
a creditor whose rights are otherwise clear.

To make this, however, stronger, suppose this
land had been sold by valid contract to a third
party, and conveyed, upon full price paid, but the
deed had not been registered, there can be no
doubt that the creditor would have taken it. Or
suppose the conveyance had been to Love in trust,
with all the trusts plainly expressed on the face
of the deed, would not the same result have fol-
lowed? If so, on what principle can a mere
parol conveyance or creation of the trusts stand
higher than one in writing? There is no excep-
tion in the statute in favor of deeds with trusts
and those without. There is nothing in reason
or sound policy, it seems to us, that demands or
permits such a distinction to be made. So that,
even conceding the trust might be such an one as
could be enforced, as against Love on the part of
Mrs. Lincoln, to prevent a fraud, and on the

ground of an estoppel on his part to deny her right, yet, as against a creditor she would still have a right unprotected, unless we can say under our registration system, a parol conveyance or declaration of trust shall stand higher than the most formal instrument in writing, or even one supported in addition by a valuable consideration paid to the conveyor. This would be absurb.

Without presenting other considerations on this aspect, we think these views conclusive of this case.

We therefore hold the creditors have the right to enforce their claims for the reasons stated.

It is probable we would reach the same conclusion on another principle. It is settled that the declaration of trust by the grantor must be before or contemporaneous with the conveyance: Perry on Trusts, vol. 1, sec. 77. It is also added by the same author, that the grantor cannot, after he has parted with the estate, charge it with any trust or encumbrance after such conveyance, and this is said to be the rule where parol trusts are allowed. We certainly see no evidence of a definite declaration of the trust in this, before or at the time of the conveyance to Love. It is shown that snch was his purpose, but that such purpose was ever declared we very much doubt, from the whole evidence in this record. Certainly Love did not hear of it for some time after, as evidenced by his answer to the Schoonover bill, filed in 1865, where, he says, he was informed and believes it

State *v.* Gaines.

was so conveyed to him in trust; and then the instrument of 1864 would indicate that if he had ever known of the trust it had passed out of his mind, at that time, to say the least of it.

The result is, that the decree of the Chancellor is reversed, and a decree will be drawn in accord with this opinion. Costs to be paid out of the fund arising from sale.