**Mildred P. GREEN, Plaintiff-Appellee,**

v.

**John R. HOOTON, Jr., et al.,
Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

Sept. 17, 1981.

Rehearing Denied Oct. 1, 1981.

Permission to Appeal Denied by Supreme
Court Dec. 14, 1981.

Ames Davis, Waller, Lansden, Dortch & Davis, Nashville, for plaintiff-appellee.

W. Gary Blackburn, Barnett & Alagia, R. Maynard Holt, Butler, Lackey, Holt & Snedeker, Nashville, for defendants-appellants.

## OPINION

CANTRELL, Judge.

The issue in this case is whether a private trust must be registered in order that real estate conveyed to the trustee will escape the claims of creditors of the settlor. The Trial Court granted summary judgment for the creditor of the settlor on the ground that a judgment creditor can reach property conveyed by a recorded deed to a trustee of an unrecorded trust.

The facts are not in dispute. On the 1st day of January, 1975, the appellant John Hooton, Jr., executed a trust agreement wherein J. M. Grissim, trustee, agreed to hold the corpus of the trust estate, accumulate the net income, and pay to Hooton's wife and children such amounts as the trustee in his sole and absolute discretion deemed advisable from time to time. Hooton delivered to the trustee the sum of $48,404.00 in cash which the trustee used as a down payment for the purchase of the real estate in question from Interstate Life and Accident Insurance Company. This transaction took place on May 1, 1975 and the trustee acquired in his own name as trustee five separate parcels of land at the intersection of Murfreesboro Road and Polk Avenue in Davidson County, Tennessee. For the balance of the purchase price the trustee executed a note and deed of trust which were recorded in the Register's Office of Davidson County.

On July 8, 1975, John R. Hooton, Jr. executed a Modification Agreement with the plaintiff, Mildred P. Green in which he agreed to guarantee the payment of a note held by Ms. Green having an outstanding balance of $210,000.00. Hooton subsequently became liable on that note and on August 3, 1977, Green obtained a judgment against him in the amount of $270,861.00 in the Chancery Court of Davidson County.

On March 27, 1976, J. M. Grissim resigned as trustee and was replaced by Mr. Hooton. The nomination and appointment of Mr. Hooton as trustee was recorded in the Register's Office of Davidson County, Tennessee on March 30, 1976, along with the original trust agreement which was attached to the instrument changing the trustee. The signatures on the original trust agreement were not notarized or acknowledged.

When Ms. Green's execution was returned unsatisfied she brought this action to subject the real estate held by the trust to the satisfaction of her judgment against Mr. Hooton. As indicated, the Chancellor granted summary judgment because the trust agreement itself was not registered.

The essential facts may be summarized as follows:

On January 1, 1975, Hooton established the trust;

On May 1, 1975, the property in question was purchased by the trustee with funds furnished by Hooton to the trust;

On July 8, 1975, Hooton executed the Modification Agreement guaranteeing payment to Ms. Green;

On January 7, 1976, Hooton became liable on the Modification Agreement when the principal debtor defaulted on the payment to Ms. Green;

On March 30, 1976, Hooton became substitute trustee;

On August 3, 1977, Green obtained judgment against Hooton;

This action was brought on July 13, 1978; and

The trust agreement was not acknowledged nor registered at the time of the purchase of the property.

The plaintiff Green bases her contention that an unrecorded trust instrument will not shield property held by the trustee from the claims of creditors of the settlor on two separate authorities: first, that the registration acts themselves require such a result; and, secondly, that the decision of our Supreme Court in *Martin v. Lincoln*, 72 Tenn. 334 (1880), is directly in point and controlling in this case. We will discuss these arguments separately.

The heavy emphasis which this State lays on the public records with respect to land titles is reflected in T.C.A. § 64–2601 and T.C.A. § 64–2603. They are as follows:

*64–2601—Effect of instrument with or without registration.*—All of the instru-
ments mentioned in § 64–2401 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from noting thereof for registration on the books of the register, unless otherwise expressly provided.

*64–2603—Unregistered instruments void as to creditors and bona fide purchasers.*—Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

Appellee claims that a trust is one of the instruments eligible for registration under § 64–2401 and, if not registered, it is void as to creditors under the provisions of § 64–2603. She cites the following subsections of T.C.A. § 64–2401 as categories into which a trust agreement falls:

(1) All agreements and bonds for the conveyance of real or personal estate.

\* \* \* \* \* \*

(5) All instruments of writing for the absolute conveyance of personal property.

\* \* \* \* \* \*

(7) Deeds of gifts of any estate, real or personal.

(8) All mortgages and deeds of trust of either real or personal property.

\* \* \* \* \* \*

(12) All other deeds of every description.

The subsections of T.C.A. § 64–2401 cited above (and others therein) reveal that basic documents relating to the sale, encumbrance, lease and devise of real and personal property may be recorded and upon recordation give notice to the world under T.C.A. § 64–2602 of the state of the title to the property. The objects of these laws are discussed in *Gibson's Suits in Chancery* § 87(6) (5th ed. 1955):

The objects of our registration laws are: (1) to preserve the muniments of title; (2) to perpetuate the evidence of their valid execution; (3) to give the community notice of the changes in the ownership of property; and (4) to prevent frauds both upon the bargainor and upon his creditors.

In order, therefore, that a registered instrument may be notice to the world it must be: (1) *an instrument authorized to be registered*; (2) it must be properly proven, or acknowledged and certified; (3) it must be registered, or noted, for registration; and (4) this registration must be in the proper county. [emphasis supplied]

The record operates as a constructive notice only when the instrument itself is one which the statute authorized to be registered. The voluntary recording, therefore, of an instrument, when not authorized by the statute, would be a mere nullity, and would not charge subsequent purchasers with any notice of its contents, or of any rights arising under it.

Recognizing the purposes of the registration statutes is helpful in understanding the *kinds* of instruments which may be registered. From an inspection of the list included in T.C.A. § 64–2401, we conclude that the kinds of instruments which relate to real property all involve a *conveyance* or *transfer* of some kind from the *record owner*. The particular sections cited above by the appellee all fall under that category. Tennessee Code Annotated, Section 64–2401(1) involves an agreement for the conveyance of real or personal property. With respect to real property, such an agreement may vest the beneficial title in the purchaser, *Mullins v. Evans*, 43 Tenn.App. 330, 308 S.W.2d 494 (1957), while the record title remains in the seller, a consequence which would be void as to creditors or subsequent purchasers if the agreement is not recorded. T.C.A. § 64–2603. Subsections (5), (7), (8), and (12) all specifically refer to conveyances, deeds, or mortgages which would be void

as to creditors of or subsequent purchasers from the *record owner* without registration.

A private trust entered into by a settlor and a trustee does not fit in this category of instruments. The trust agreement is not a conveyance; it does not pass title from the record owner or draw title to the trustee; it simply is an agreement which sets out the rights and duties of the settlor, the trustee, and the beneficiaries. When a conveyance is made to the trustee, the trustee becomes the holder of the legal title and the beneficiaries of the trust may have a beneficial interest in the property depending on the terms of the trust agreement. But the thing to remember is the fact that the *record title* is complete; the record shows the conveyance to the trustee and no one is misled into the belief that the settlor still has title to the property. The object of the recording statute is met by recording the deed to the trustee—not by recording the trust agreement.

In the instant case, recording the trust agreement would not have added anything of value to the notice creditors had from the records on file in the register's office. The records showed a conveyance to the trustee. Recording the trust would only have indicated who the beneficiaries were and on what conditions the trustee held the property.

Therefore we conclude that a private trust agreement is not one of the instruments that may be registered under T.C.A. § 64–2401, and because of that fact it is not void as to creditors because of the effect of T.C.A. § 64–2603.

Next, the appellee relies on the case of *Martin v. Lincoln*, 72 Tenn. 334 (1880). In that case, George Lincoln bought real property in the City of Memphis, paid the purchase price, and had the deed made to his brother-in-law, D. C. Love. The deed, absolute on its face and with no indication of a trust, was properly recorded. Sometime after the conveyance to Love, Lincoln made the transfer known to Love and told him the property was to be held in trust for his

sister, Lincoln's wife. Love consented to this arrangement and signed an acknowledgment of the agreement in which he agreed to quitclaim the property to his sister.

Soon thereafter Lincoln's creditors brought an action to subject the property to the satisfaction of their claims. The Supreme Court held that the property could be subjected to the claims of Lincoln's creditors. The Court posed the question involved (actually two questions) as follows:

The case then presented, and the question to be decided is, whether, as against creditors of the conveyor, seeking to enforce debts, a conveyance without consideration, to another, absolute on its face, but with an intention, subsequently made known to the conveyee, that he shall hold the land so conveyed for the benefit of the conveyor's wife, can give the wife the right to hold the land as against such creditors? Or it may be more shortly stated, whether such a parol trust in favor of the wife, can be set up as against the creditors of the husband, in land conveyed by the husband to another for her benefit.

*Id.* at 338.

The Court concluded that under the circumstances of that case, Lincoln still retained a legal interest in the land conveyed to Love, subject to execution at law by Lincoln's creditors, whose rights could only be defeated by a conveyance duly noted or registered as the recording statutes required. The Court said:

The estate conveyed to Love, Lincoln paying the consideration, nothing more appearing, and as the conveyance stood on the Register's books, on the facts stated, was an estate subject to execution at law, the judgment against Lincoln would be a lien on the land thus conveyed . . . This being so, if the principle of these statutes are to be carried out, how can the creditor be overridden, except by a conveyance, complying with the rule thus established? It is a legal estate, subject to execution or defeated by a conveyance, noted or registered, as the statute required. On what principle can we make a distinction, in favor of a party claiming the beneficial interest? It is the assertion of an unregistered title against a creditor whose rights are otherwise clear.

*Id.* at 349–50.

As authority for the proposition that Lincoln still had an interest in the property, the Court cited two cases, *Smitheal v. Gray*, 20 Tenn. 491 (1840) and *Thomas v. Walker*, 25 Tenn. 93 (1845). In *Smitheal*, the debtor paid the purchase price for a city lot and had it conveyed to his brother. The Court found this transaction created a resulting trust which, according to the Court, could be raised by parol proof and was subject to execution from a court of law. In *Thomas*, Langtry bought property for Thomas at a foreclosure sale, using the resources of Thomas, and took title in his own name. Langtry's creditors sought to levy on the property to satisfy a judgment lien. The Court held that under the circumstances a trust resulted in favor of Thomas and Langtry had legal title only to which a judgment claim would not attach. The estate in *Thomas*, however, would be subject to an execution at law.

Thus, these cases do support the proposition that where property is purchased with assets of one person but legal title is taken by another, with nothing else appearing, a resulting trust arises in favor of the true owner which is subject to execution at law. To put that interest beyond the claims of creditors requires a conveyance properly recorded. Since that did not appear in *Lincoln*, the parol trust asserted by Mrs. Lincoln did not defeat the claims of her husband's creditors.

However, *Lincoln* is not this case. Here we do not have a resulting trust in favor of Mr. Hooton. We are dealing here with an express trust, a "substantive institution." Pound, *Progress of the Law, 1918–1919—Equity*, 33 Harv.L.Rev. 420 (1920). It should be distinguished from the remedial

devices of constructive or resulting trusts which the law will recognize and enforce when necessary in order to prevent unjust enrichment or to provide a better remedy suited to the circumstances of the particular case. Here the property was deeded in a properly recorded instrument to the trustee to be held and used for the express purposes of the trust. The trust is in writing. It outlines the rights and duties of the trustee and the beneficiaries. It is enforceable in a court of equity which imposes on the trustee the highest duty of care and fidelity.

Further, the property was not purchased with Mr. Hooton's money; the funds were part of the trust estate and the purchase was by the trustee. The funds may have initially come from Mr. Hooton but he had by the time of the purchase placed the funds in the trust to be used for the trust purposes as defined in the written trust agreement. He no longer had control over the funds since control had passed to the trustee. The situation in this case is not the same as *Lincoln.*

Therefore we conclude that the Chancellor was in error in granting summary judgment below. His decision is reversed and the cause is remanded to the Chancery Court for further proceedings. The costs on appeal are taxed to the appellee Mildred Green.

REVERSED AND REMANDED.

TODD, P. J. (M. S.), and CONNER, J., concur.

OPINION ON PETITION TO REHEAR

CANTRELL, Judge.

The appellee has filed a petition to rehear. After consideration of the petition and the authorities cited therein, the Court is satisfied that the original opinion was correct. The petition is denied.

TODD, P. J. (M. S.), and CONNER, J., concur.