## DEWEY *v.* GOODMAN.

### (*Jackson.*   June 8,   1901.)

1. MARRIED WOMAN.   *May convey her separate estate to her husband.*

    A married woman, possessing unlimited power of disposition over her separate estate, may make a valid conveyance of it to her husband.   (*Post, p. 253.*)

    Cases cited: Vick *v.* Gower, 92 Tenn., 391; Peterson *v.* Richman, 93 Tenn., 71.

2. SAME.   *Privy examination may be taken by Notary Public.*

    A married woman's privy examination to her deed conveying her separate real estate may be taken and certified by a Notary Public.   (*Post, p. 252.*)

    Act construed: Acts 1870, Ch. 71.

    Case cited and distinguished: Huff *v.* Glenn, 101 Tenn., 112.

3. SAME.   *Deed for separate estate valid without privy examination.*

    A married woman's deed for her separate estate, over which she possesses unlimited power of disposition, is valid without privy examination.   (*Post p. 252.*)

    Cases cited: Sherman *v.* Turpin, 7 Cold., 382; Peterson *v.* Richmon, 93 Tenn., 71.

4. SAME.   *Estoppel of.*

    A married woman is estopped to reclaim her separate estate where she has conveyed same to her husband by deed reciting only a consideration of love and affection, and thereafter joins the husband in a conveyance of the same to an innocent third person, and permits her husband, in her presence, to receive the purchase price, without protest, no matter to what extent the husband may, without knowledge or participation of the purchaser, have imposed upon and defrauded her.   (*Post, pp. 252–256.*)

5. FRAUD.   *Presumption of.*

    A gift to a spiritual medium by his victim is presumed fraudu-

Dewey v. Goodman.

lent, especially where the parties bear the relation of husband and wife. (*Post, p. 255.*)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County. F. H. HEISKELL, Ch.

JAMES GALLAGHER for Dewey.

L. & E. LEHMAN for Goodman.

McALISTER, J. This bill was filed by Mrs. Mary Dewey to set aside a conveyance of her separate estate, or, in the alternative, to recover from the purchaser the purchase price. The Chancellor dismissed the bill, and complainant appealed.

It is alleged in the bill that, prior to May 30, 1890, complainant was the widow of one C. H. M. Smith, and, on that date, one Mary Schoonover devised all her real property to complainant, with the limitation that, upon her marriage, she should hold the devised property to her sole and separate use free from the debts, contracts, or control of her husband. Mrs. Schoonover devised to complainant Lot 4, Block 47, in Memphis, Tennessee. It is then alleged that, prior to the decease of Mrs. Schoonover, she and complainant lived together and became acquainted with Dewey, who claimed to be a physi-

cian and spiritual medium, and had induced the two ladies to believe in his manifestations.

It is further alleged that, on December 1, 1890, complainant entered into an ante-nuptial contract with Dewey, whereby he settled on her all her property, to her sole and separate use, free from the contracts, liabilities, or control of said Dewey, with full power to her, the said Mary, to dispose of it by will, deed, mortgage, or other conveyance, as a *feme sole*. The ante-nuptial contract was duly acknowledged and recorded.

The bill further recites that, on December 2, 1890, complainant intermarried with the said Charles B. Dewey. It is alleged that, soon after the marriage, Dewey became extravagant and wasted complainant's money and means, and that in a short time Dewey induced complainant to execute a conveyance of her property to him promising to pay her therefor $3,000, and that she executed the deed to him on January 27, 1891, retaining a lien for $3,000. The deed recites that it is made "in consideration of the love and affection she bears her beloved husband, Charles B. Dewey." It appears that the deed was executed on a printed blank containing these words, "A lien is hereby expressly retained on the above described property in favor of the said Mary Dewey, her heirs, representatives and assigns, to secure the deferred payments of the purchase money, and should any of the future payments not be discharged when due, then the notes not then

due on their face shall immediately become due and ——————— ———————, of Memphis, Tennessee, as trustee, after giving notice for thirty days in some newspaper published in Memphis, Tennessee, of the time, term and place of sale, together with the description of the property, proceed to sell such property to the highest bidder for cash, free from the equity of redemption, and applying the proceeds, (first) to the payment of the costs and expenses, (second) to the payment of the purchase money that may be due, with legal interest from the date thereof, and (third) pay over the residue, if any, to the said ——————— ———————.

It appears that the deed from Mary Dewey to her husband was duly acknowledged by complainant, with privy examination before H. Battenberg, a Notary Public for Shelby County, and was duly recorded February 2, 1891.

It is alleged that the omission of the purchase money, the name of the trustees, and the execution of the notes from the deed was the result of the fraud and contrivance of the said Charles B. Dewey. It is then alleged that on March 6, 1891, complainant was induced, by the fraud and contrivance of her said husband, to sign and acknowledge the execution of a deed to the defendant, Joseph Goodman, of the land devised to complainant by Mrs. Schoonover, upon the promise and understanding that complainant should recover from the proceeds of such sale the sum of $3,000, which her husband had agreed to give her

in the conveyance made to him on January 27, 1891, and that it was agreed further with her husband that the deed to Goodman should not be delivered until she had received the said $3,000. The deed to Goodman, which was signed by complainant and her husband, acknowledged the payment of the purchase money, to wit, the sum of $5,000, to complainant and her husband. This deed was acknowledged by complainant and her husband before John E. Kelly, Deputy Clerk of the County Court, on March 5, 1891, with privy examination of the wife.

Complainant charges in her bill that the consideration expressed in the deed, of $5,000, was not received by her and her husband, and that she had never received any part thereof whatever. It is further alleged in the bill that, in the year 1894 or 1895, complainant's husband, the said Charles B. Dewey, had abandoned her, and had not since lived with her. It is further charged, viz., "that if complainant's conveyance to her husband be valid that when she executed the deed to Goodman she had a valid lien on the property for the purchase money, to wit, $3,000, and that the failure of Goodman to pay the lien debt to complainant in person was no discharge of the lien, and that it is still a valid and subsisting lien against the land. (2) Complainant charges that, if her deed to her husband was invalid and no lien was retained for purchase money, then her other deed is void for want of delivery by her.

(3) That if both deeds were valid, payment of the $5,000 purchase money by Goodman to her husband was not a good and valid payment to her; and that, as defendant Goodman claims title under the will of Mrs. Schoonover and said deeds, he is estopped from disputing complainant's title to recover the purchase money, otherwise the will and devise of Mrs. Schoonover and the marriage contract would be defeated, and, with these aspects, complainant prays to maintain this bill."

The prayer of the bill is that complainant be allowed a decree for the purchase money under either of the said two deeds with a lien on the land, or that she recover the land in specie, with an account of any change in the property "detracting or enhancing its value and the rent thereof."

Defendant demurred to the bill assigning, among other causes, the following, to wit: It appears from the bill that complainant owned, as her separate estate, the land described therein, and by deed dated January 27, 1891, duly acknowledged by her with privy examination, in consideration of love and affection, conveyed said land to her husband, and that thereafter she and her husband by joint deed, which was also acknowledged by both of them, with like privy examination of complainant, conveyed the land to defendant for $5,000; but that there was a private understanding between complainant and her husband that the latter should pay her $3,000 out of the $5,000, which her husband did not do, upon

which showing complainant is entitled to no relief against defendant. Other causes of demurrer were assigned.

The demurrer was overruled.

The defendant, Goodman, then answered the bill, and avers he had at no time any business transaction, association or acquaintance with Dewey, except in the purchase of said land, and no knowledge of any fraud practiced by the said Dewey upon the complainant. Defendant avers he was introduced to complainant and her husband by a real estate agent, and that he paid $5,000 in cash for the property in the presence of both complainant and her husband at the time of the delivery of the deed. That immediately after the execution of the deed and the payment of the consideration defendant took possession of the land and that he has been in possession ever since. Defendant avers that the purchase money of $5,000 was paid over to Dewey in the presence of the complainant, and with her full knowledge and consent, and that she made no question as to the validity or propriety of such payment. Moreover, that her husband, the said Dewey, paid over to her at the time a part of the consideration. Defendant then relies upon a plea of innocent purchaser. He further shows that, after he had paid for the land, he expended $9,000 in improvements thereon, and that this money was expended with the knowledge of complainant, who stood by and saw him expend the money without

making any claim to the property, and that the present bill is filed nine years after his purchase, and defendant insists that complainant has by her laches estopped herself from claiming any relief herein.

Complainant afterward filed an amended bill, in which she charged that the Notary Public who took her acknowledgment of the deed executed· to her husband had no authority to take her privy examination because he was not an officer designated and empowered by law to take such an acknowledgment. Complainant in this amended bill also attacks the authority of John E. Kelly, as Deputy County Court Clerk, to take the complainant's privy examination in the deed executed by her, jointly with her husband, to the defendant Goodman.

This demurrer was also overruled. Proof was taken, and on the final hearing the Chancellor dismissed the bill, and complainant appealed.

The first assignment· of errors is that the deed from complainant to her husband, the said Charles B. Dewey, executed on January 27, 1891, was void for want of authority in the Notary Public to take Mrs. Dewey's acknowledgment and privy examination. The insistence is it should have been taken by a Chancellor, Circuit Judge or Clerk of the County Court. This assignment of error is based upon the authority of *Huff* v. *Glenn*, 17 Pickle, 112. The will of Mrs. Mary Shoonover, after devising the property to complainant, provided that "should she

Dewey v. Goodman.

ever marry she shall hold all of my property, real and personal, to her sole and separate *use*, free from the debts or control of any husband.''

In addition to the provision of the will, it appears that on December 1, 1890, complainant entered into an ante-nuptial contract with Dewey whereby he settled on her all her property ''to her sole and separate use, free from contracts, liabilities or control of said Dewey, with full power to her, said Mary, to dispose of it by will, deed, mortgage or other conveyance, as a *feme sole.*'' Under the terms of her ante-nuptial settlement, the wife could have conveyed her real estate without privy examination. *Sherman* v. *Turpin*, 7 Cold., 382; *Peterson* v. *Richman*, 9 Pickle, 71.

In the present case the privy examination of the wife was taken by a Notary Public and it is insisted that it should have been taken by a Chancellor, Circuit Judge, or Clerk of the County Court, as required by Sec. 2, Chap. 99, Acts of 1869–70. This contention is not well made. The authority of a Notary Public to take such privy examination was expressly conferred by Sec. 1, Chap. 71, of the Acts of 1870. Under this Act Notaries Public have all the powers in respect to taking acknowledgments that are given by existing laws to County Court Clerks. *Daly* v. *Hamilton Assn.*, 48 S. W. R., 117.

The second assignment of error is that if the validity of the deed from complainant to her husband

be conceded the Chancellor erred in not enforcing the express lien for purchase money reserved by the wife. In answer to this assignment it may be said that there is no recital in the deed of any money consideration, but the consideration is love and affection. The land was the wife's separate estate, and her conveyance thereof to her husband with privy examination vested the title to the land in the husband. *Vick* v. *Gower*, 92 Tenn., 391.

Thereafter the complainant, by joint deed with her husband, which she acknowledged with privy examination, conveyed the land to defendant Goodman.

Complainant herself admits she never spoke to Goodman before the deed was delivered to him, and never told him of the agreement between herself and husband that she was to get $3,000 of the purchase money, and she admits that, so far as she knew, Goodman was ignorant of any such agreement. The proof shows that the purchase money was paid by Goodman to Dewey in the presence of complainant and with her implied acquiescence and consent, and that she made no objection to anything that was done. There is no proof in the record whatever that defendant Goodman knew that complainant claimed a secret lien on this land for purchase money due from her husband, and complainant having joined in the conveyance to Goodman and having seen the purchase price paid to her husband without asserting any such claim is now estopped to make it as against defendant.

The third assignment is that Dewey practiced a fraud upon Complainant in procuring a deed to her real estate worth $5,000, for mere love and affection and that defendant Goodman was charged with knowledge of the fraud. The bill alledged that Complainant was of unsound mind when she executed the two deeds of which fact the defendant had knowledge.

The Notary Public who took the acknowledgment and who had known the Complainant for some time testified that she was entirely at herself when she acknowledged the deed. Complainants' counsel admits in his brief the proof fails to show Complainant was *non compos mentis* at the time of the trade, but his claim is that she was a person of weak mind and was terrorized by her husband's extraordinary feats in spiritualism.

The Notary testified that Mrs. Dewey had at a previous time consulted him about the advisability of transfering her property to her husband. The witness commenced to speak in English when Mrs. Dewey interrupted him telling him not to speak in English that Waumeeka, her husband's spirit, was listening and would communicate to him everything that might be said. The Notary advised Mrs. Dewey not to transfer the property to her husband, but it appears that she did not heed his advice. Complainant testified that her husband would get in a trance and remain in such state a whole hour at a time; that he professed to communicate with the

spirits of the dead, that he had little dolls and canoes representing spirits; he claimed that these toys guided him and put him in a trance; that one of the little dolls represented Waumeeka, a dead Indian queen; he professed to talk to Waumeeka; he would cover himself with blankets and sit in the corner playing Indian, and at other times would carry on an Indian war fight. Complainant claims that these capers alarmed her and kept her in a constant state of trepidation; that with her husband as a medium she could not help but believe in spiritualism, and in this way he obtained absolute dominion and control over her and abused the confidence reposed. As an evidence of her husband's extravagance complainant states that after their marriage he invested $75 in different varieties of birds; that he purchased them simply for his own amusement and kept them on the southern porch of the house. It was held in *Lyon* v. *Horne*, *L. R.*, 6 Eq. 655 that a presumption of fraud would arise where it appeared that a spiritual medium had obtained the confidence of one whom he had induced to believe in his manifestations. This presumption is of course much stronger where the relation of husband and wife subsists and the wife has been induced to part with her separate estate.

But while this principle would apply between husband and wife in a suit for rescission for fraud and undue influence, it can have no application in the suit of the wife against a third party who is

not shown to have had any knowledge of the abuse of confidence reposed by the wife in her husband or any knowledge that fraud was practiced or undue advantage taken.    Moreover   the proof shows that after all these alleged fraudulent transactions com‐ plainant joined her husband in a deed conveying the property to defendant and permitted the purchase money to be paid to him.    The purchaser has ex‐ pended $8,000 in the improvement of the lot and the present bill was not filed until nine years after the purchase.

The decree of the Chancellor dismissing the bill is affirmed.