### IN THE

# SUPREME COURT OF TENNESSEE

#### FOR THE

## MIDDLE DIVISION.

---

### NASHVILLE, DECEMBER TERM, 1905.

---

INSURANCE COMPANY OF TENNESSEE *v.* R. W. WALLER.

## (*Nashville.* December Term, 1905.)

1. **TRUSTS AND TRUSTEES.** Valid express parol trust in land. may be created at time of conveyance, and enforced, when.

A valid express trust, involving real estate, enforceable in equity, can be created by parol, and such a trust is created by a parol agreement made by a conveyee at the time of the conveyance of the land, to hold the land in trust for the conveyor, to be conveyed as he may direct, for a contemporaneous parol agreement, made at the time of the execution and delivery of a conveyance of land, absolute upon its face, that the conveyee will hold the said land in trust for a certain person is not within the statute of frauds, and aside from the rights of creditors of the original conveyor and innocent purchasers from the conveyee, vests in the beneficiary of the trust a valid equitable title to the land, which a court of equity will enforce. (*Post, p. 8.*)

116 Tenn.—1 (1)

Insurance Co. v. Waller.

Cases cited and approved: Woodfin v. Marks, 104 Tenn., 519-520; Mee v. Mee, 113 Tenn., 455; Thompson v. Thompson, 54 S. W., 145; Renshaw v. Bank, 63 S. W., 205.

2. **DEEDS OF CONVEYANCE.** Sufficient, though name of conveyor does not appear in body of operative parts of the deed, when.

Where a deed of conveyance of land is substantially in the form prescribed by the statute, and it sufficiently appears from the whole instrument that it is the contract and deed of the signer, and clearly expresses his intention to convey the land described it is sufficient; although the name of the signer does not appear in the body or operative parts of the deed, and the pronoun "I" is, by clerical error, omitted in one place. (*Post, p.* 10.)

Act cited and construed: Sec. 3680 (S.); sec. 2820 (M. & V.); sec. 2013 (1858).

Case cited and approved: Kelton v. Brown, 39 S. W., 543.

Case cited and distinguished: Berrigan v. Fleming, 2 Lea, 274.

3. **TRUSTS AND TRUSTEES.** Married woman may accept, hold and execute a trust in land, and convey in execution of the trust, without joinder of her husband, and even convey to him.

A married woman may accept, hold and execute a trust relating to real estate, and she has the power, in execution of a trust, to convey real estate so held in trust, without the concurrence of her husband or his joinder in the conveyance made by her; and this rule extends to trusts in which the husband of the trustee is the beneficiary, and to her conveyances made in its execution directly to him. (*Post, pp.* 10-18.)

Cases cited and approved: Gridley v. Wynant, 23 How., 500; Springer v. Berry, 45 Me., 330-338; Sawyer's App., 66 N. H., 559; Barneby v. Griffin, 3 Ves., 266; Moore v. Coddingham, 90 Ind., 242; Hardin v. Darwin, 66 Ala., 55; Land v. Waters, 25 Iowa, 43; Cairns v. Colburn, 104 Mass., 274; Whitten v. Whitten, 3 Cush., 191-197; Fox v. Doherty, 30 Iowa, 334.

Insurance Co. v. Waller.

4. **DEEDS OF CONVEYANCE.** Married woman cannot convey her general estate in lands without the joinder of her husband and privy examination.

A married woman cannot convey lands held by her in her own right and as a general estate and not as a separate estate, except by the joinder of her husband in the execution of the deed, and her privy examination, properly taken and certified in strict pursuance of the statute. (*Post, pp.* 11, 12.)

Code cited and construed: Sec. 3755 (S.); sec. 2891 (M. & V.); sec. 2076 (1858).

Cases cited and approved: Cope v. Meeks, 3 Head, 387; Gillespie v. Worford, 2 Cold., 639; Moseby v. Partee, 5 Heisk., 26-36; Giffin v. Giffin, 37 S. W., 710; Ellis v. Pearson, 104 Tenn., 591; Vick v. Gower, 92 Tenn., 391; Dewey v. Goodman, 107 Tenn., 253; Barnum v. LeMaster, 110 Tenn., 640.

5. **TRUSTS AND TRUSTEES.** Taint of fraud in creation of parol trust in land will not affect the beneficiary's right after a conveyance to him in execution of the trust.

Where a parol trust in land, tainted with fraud in its creation, has been executed by a conveyance of the land to the beneficiary, who thus acquired both the legal and equitable title to the land, the previous fraud will not bar him from a recovery upon a contract in relation to it or for trespass committed upon it. (*Post, pp.* 18, 19.)

Cases cited and approved: Butlar v. Butlar (N. J. Eq.), 57 Atl., 722; Bolton v. Pittney, 46 N. J. Eq., 610.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson County.—J. A. CARTWRIGHT, Judge.

J. W. Bonner and C. C. Mooney, for Insurance Co.

J. S. Pilcher, for Waller.

———

Mr. Justice Shields delivered the opinion of the Court.

This action was brought by R. W. Waller, in the circuit court of Davidson county, to recover upon a policy of fire insurance issued to him October 8, 1901, for $1,000, upon certain property situated in the city of Nashville. The policy contains a stipulation that it shall be void "if the interest of the insured be other than unconditional sole owner of it; or if the subject of the insurance be a building on ground not owned by the insured in fee simple." The defendant pleaded the general issue of not guilty, and special pleas, averring that the plaintiff was not the unconditional and sole owner of the property, and that he was not seized in fee of the ground upon which the buildings destroyed were situated. The issues joined were submitted to a jury, and there was verdict and judgment in favor of the plaintiff Waller. The insurance company brings the case to this court, and assigns as error, among other things, that there is no evidence to sustain the verdict. This contention is based upon the assumption that there is no evidence in the record to show that the plaintiff, at the time that the property was insured and destroyed, was the unconditional and sole owner of it, and none that he

owned in fee simple the ground upon which the buildings insured and destroyed stood.

The facts in relation to the title of the property insured and destroyed, and the ground upon which it stood, are these: R. W. Waller, the plaintiff, owning the lots in question in fee simple, on March 13, 1894, for the purpose of hindering, delaying, and defrauding his creditors, conveyed them by deed, with full covenants of warranty, for a recited consideration of $3,000, to his kinsman, W. H. Hyde, with a contemporaneous parol agreement and understanding that the latter should hold them for his use, and convey the title as he should direct. No consideration was in fact paid.

W. H. Hyde, being about to marry, and Waller fearing some complication, procured him to convey the property by deed, absolute upon its face, with full covenants of warranty, to Mrs. Madora Waller, wife of R. W. Waller, for a recited consideration of $3,500 in hand paid, she agreeing at the time to hold it in all respects as it was held by Hyde. No consideration was paid by Mrs. Waller.

Afterwards, December 7, 1898, Mrs. Madora Waller for a recited consideration of $5.00, but in fact without any other than her agreement to hold the property for the use of her husband and convey it as he should direct, undertook to reconvey it to him by an instrument in these words:

"For and in consideration of the sum of $5.00, and other good and sufficient consideration, have bargained

and sold by these present do transfer and convey unto the R. W. Waller, his heirs and assigns, a certain tract or parcel of land in Davidson county, State of Tennessee, as follows: Lots Nos. 3 and 4 in John Lunsden's 3rd addition, as per plan in book 57, page 106, of the R. O. D. C. Said lots front 150 feet on the south side of Mill street, and run back between parallel lines 135 feet to an alley. To have and to hold the said tract or parcel of land, with the appurtenances, estate, title, and interest thereto belonging, to the said R. W. Waller, his heirs and assigns forever. And I do covenant with the said R. W. Waller that I am lawfully seized and possessed of said lands in fee simple, have a good right to convey it, and the same is unincumbered. And I do further covenant and bind myself, my heirs and representatives, to forever warrant and defend the title to said lands against the lawful claims of all persons whomsoever. Witness my hand, this 14th day of September, 1898. (Signed) Madora Waller."

An acknowledgment and privy examination appear to this deed in these words: "State of Tennessee, Davidson County: Personally appeared before me, W. F. Davis, a notary public in and for said county and State, the within named bargainor, Mrs. Madora Waller, with whom I am personally acquainted, and who acknowledged that she executed the within instrument for the purposes therein contained. And Mrs. Madora Waller, wife of the said R. W. Waller, having personally appeared before me privately and apart from her husband, the

said Mrs. Madora Waller acknowledged the execution of said deed to have been done by her freely, voluntarily, and understandingly, without compulsion or restraint from her said husband, and for the purpose therein expressed. Witness my hand and official seal at Nashville, Tennessee, this 7th day of December, 1898. W. F. Davis, notary public."

The contention of R. W. Waller, upon these facts, is that a parol trust was created in his favor by the agreement of W. H. Hyde and Mrs. Madora Waller, respectively, when the conveyances were made to them, to hold the property for him and subject to his direction, valid and enforceable, and that the instrument above set out, executed and acknowledged by Mrs. Waller, was a valid execution of the trust and revested him with the absolute and unconditional fee simple title to the property; that if the instrument executed by Mrs. Waller was for any reason inefficient to revest the title of the property in him, then she held it in trust for him and in equity could be compelled to convey it to him, and that such equitable title filled the requirements of the policy as to ownership and title.

While that of the insurance company is that the parol trust created in favor of R. W. Waller is within the statute of frauds and perjuries, and void; that if it were valid it is unexecuted, the deed signed by Mrs. Waller being void, because her name does not appear in the body and operative part of it, and her husband did not join in its execution; and unenforceable because made for the pur-

pose of defrauding the creditors of R. W. Waller, and consequently there is a total failure to prove a title of any kind.

We are of the opinion that a valid express trust, involving real estate, enforceable in equity, can be created by parol, and that, other questions out of the way, such a trust was created by the agreements made by W. H. Hyde and Mrs. Madora Waller, at the time the property in question was conveyed to them respectively, that they held it in trust for R. W. Waller, to be conveyed upon his request as he should direct.

It is now well-settled law in Tennesssee that a contemporaneous parol agreement, made at the time of the execution and delivery of a conveyance of real estate, absolute upon its face, that the vendee will hold the property conveyed in trust for a certain person, is not within the statute of frauds, and aside from the rights of creditors of the original vendor and innocent purchasers from the vendee vests in the beneficiary of the trust a valid equitable title to the property conveyed, which a court of equity will enforce. We need only refer to the recent cases in which the reasons for the rule are fully and clearly stated. They are: *Thompson* v. *Thompson,* 54 S. W., 145; *Renshaw* v. *First Nat. Bank,* 63 S. W., 205-206; *Woodfin* v. *Marks,* 104 Tenn., 519-520; *Mee* v. *Mee,* 113 Tenn., 455.

It being settled that Mrs. Madora Waller, under the conveyance made to her by W. H. Hyde, and the contemporaneous agreement made with him and her hus-

band, R. W. Waller, held the land in trust for her said husband, R. W. Waller, the next question for determination is whether or not this trust was executed, as contended by the defendant in error, so as to vest the sole and unconditional fee simple title to the property in him. This depends on the sufficiency of the deed executed and delivered by Mrs. Waller to her husband. It is attacked on two grounds. It is said it is void and ineffective as a conveyance, because her name does not appear in the operative part of it. This omission, in this case, is not a fatal defect. It sufficiently appears from the whole instrument that it is the contract and deed of Mrs. Madora Waller, and clearly expresses her intention to convey the property described in fee to R. W. Waller. It is substantially in the form prescribed by the Code, sec. 2013, Shannon's Ed., 3680, for forms of conveyances of real estate. The only apparent defect in it is, that in the second line, after the expression of the consideration, the pronoun "I" is omitted, but this is evidently a clerical error and is supplied by the context and subsequent recitals and parts of the deed. This pronoun appears in the covenants, and the signature of Mrs. Waller at the bottom of the deed, showing that it was her intention to contract and convey in all things as set forth in the instrument thus signed and executed by her. The deed is executed by her alone, and the contract contained in it should not be attributed to any other person.

The case of *Kelton* v. *Brown*, 39 S. W., 543, is much in point. The conveying part and covenants of the deed in question in that case were in these words: "For and in

consideration of the sum of $200, cash in hand paid, I have this day bargained and sold, and do hereby transfer and convey unto W. J. Kelton, his heirs and assigns, forever, a certain lot," etc., describing the property; and, "Now, we do covenant with the said W. J. Kelton that we are lawfully seized of said property and have a good right to convey it, and that the same is unincumbered. We further covenant that we will forever warrant and defend the title to said house and lot against the lawful claims of all persons whomsoever." The court held that the use of the personal pronoun I, in the first part of the conveyance, instead of we, was a patent inadvertence, and that the use of the plural we, in the covenants followed by the execution of the instrument by the wife along with the husband, was sufficient to show the purpose of the parties and the intention of the wife to join in the conveyance of the property.

This is not in conflict with the case of *Berrigan* v. *Fleming*, 2 Lea, 271, 273-275. In that case there was nothing whatever in any part of the deed indicating the intention of the wife to join in it. It was wholly the deed of the husband. There was no reference to the wife in the body of the deed, and her name only appeared as a signature to it, and in the privy examination. The deed in question is solely the deed of Mrs. Waller. No other name appears in it or to it, and every intendment is that it is her contract and deed.

The other objection to the deed is that R. W. Waller did not join his wife in its execution. It is insisted that

a married woman cannot convey real estate, other than her separate estate, without the joinder of her husband, and that, for the nonjoinder of the husband in this case, this conveyance is void and is ineffectual to vest title in the property insured to the conveyee.

The rule invoked is the law applicable to conveyances made by married women of lands held by them in their own right and as a general estate. By the common law, married women could only convey their lands by fine and common recovery. They first were authorized to convey by deed, with privy examination jointly with their husbands, by an act passed by North Carolina in 1715, which came to us with other statutes of that colony and State, and, after several amendments by our general assembly, was carried into our Code, section 2076, and is now the law in this State.

The power of married women to convey their general estate in lands by deed is vested in them by this statute, only when their husbands join in the execution of the deed, or, in other words, their incapacity to convey real estate so held by them is removed, so as to enable them to convey by joint deed of the husband and wife, with proper privy examination of the latter, and otherwise it remains as at common law, and in order to effect a valid conveyance of the title of a married woman to her general estate, the statute must be strictly pursued. This is all that is held in the cases cited and relied upon by counsel for plaintiff in error to sustain his contention that the deed of Mrs. Waller to her husband is void, be-

cause she alone executed it, the chief of which are: *Cope* v. *Meeks,* 3 Head, 387; *Gillespie* v. *Worford,* 2 Cold., 639; *Mosely* v. *Partee,* 5 Heisk., 25-36; *Giffin* v. *Giffin,* 37 S. W., 710; *Ellis* v. *Pearson,* 104 Tenn., 591.

This rule and these cases, however, have no bearing on the case at bar. Mrs. Waller did not hold and convey the property insured in her own right, but as trustee for her husband. By the common law married women had the capacity and the power to take and hold lands as trustee and to execute the duties and powers of the trust, including that of conveying the trust property by deed, without the concurrence and joinder of their husbands in all things as could a *femme sole.* The reasons upon which the common law rule withholding from a married woman the power to convey her general estate was founded, and for the provisions of the statute requiring the concurrence of her husband in her conveyance, which are that the husband may be present to protect his wife from imposition, and his marital rights in the property conveyed, and to prevent domestic disturbances, do not apply to cases where she is acting as trustee, for as a rule a trustee has no beneficial interest in the trust, and there is therefore no interest for the husband to protect; but we do not mean to hold that a married woman cannot now accept and execute a trust in which she is interested. The authorities fully support these conclusions.

Mr. Bishop in his work on Married Women, vol. 1, section 700, says: "Since the wife has the capacity to receive an estate, real or personal, she may receive it as

trustee for use of the third person ;" citing *Gridley* v. *Wynant,* 23 How., 500; *Springer* v. *Berry,* 45 Me., 330-338; *Sawyer's App.,* 16 N. H., 459; 2 Kent's Com., 151; *Barneby* v. *Griffin,* 3 Ves., 266.

He further says, vol. 2, sections 115-118: "We saw in the first volume that a wife may be a trustee even where she is under all the incapacities of the law. *A fortiori,* she may be under the statutes which free her more or less from the disabilities of coverture, and confer on her the power to hold property like a *femme sole* to her own use. As a husband may, and often does, hold property, the true owner of which is his wife, and the wife sometimes holds property, the true owner of which is her husband, this doctrine of resulting trust finds a not infrequent exemplification in the marriage relation. And it is in essence and principle precisely the same between husband and wife as between any other persons."

Mr. Perry, in his work on Trusts, vol. 1, section 48, says: "Married women may become trustees by deed, gift, bequest, appointment, or by operation of law. If an estate comes to a married woman in any way, charged with a trust, her coverture cannot be pleaded in bar of the trust; and a court of equity will enforce its execution; and when the legal title to lands in trust was cast by descent upon a married woman, and the law required that a deed executed by her should be acknowledged as executed voluntarily, and she refused so to acknowledge it, the court compelled her by decree. But specific performance will not be enforced by a *femme covert* trustee

for sale upon her contract as trustee to convey.  There is no less judgment and discretion in the woman after marriage than before.  Sir John Trevor thought she rather improved by her husband's teaching.  The reasons of her disabilities are founded upon her own interests, or her husband's, or both ; or rather upon the broader policy of the law which, for the purpose of domestic peace and happiness, merges the proprietary interests of the wife during coverture in her husband, and will not permit  her to hold interest separate from and independent of, and possibly antagonistic to, him.  But the policy of the law has, however, been very much modified by legislation in later years.  But where such interests are not concerned, she possesses the same legal capacity as if she were *sui juris*.  Thus, she may execute any kind of power, whether simply collateral, appendant, or in gross; and it is immaterial whether it is given her while sole or married.

"In equity the absolute interest in the trust fund is vested in the *cestui que trust*.  The trustee is a mere instrument, and any power or authority in the trustee must have the character of a power simply collateral; therefore, there is nothing, as respects legal capacity, to prevent married women from administering a discretionary trust.  But she cannot create a trust in her absolute property, except by joining her husband in conveying it, or in executing a declaration of trust."

In section 50  the author points out certain inconven-

iences which may arise in the execution of a trust by a married woman, on account of her inability to execute bonds and do certain other things, and then (section 51) says: "Subject to these inconveniences, a married woman can always be a trustee; and she may even be a trustee for her husband, as well as her husband for her, and courts will find means to enforce the trusts."

In *Moore* v. *Cottingham,* 90 Ind., 242, the wife in the execution of a parol trust in favor of her husband, conveyed the property for his use, without his joinder, and the conveyance was held valid. In that case it is said: "Had she been the beneficial owner of the land the deed would have been worthless, as a married woman has no power to convey her lands, unless the husband joins in the conveyance. This rule, however, does not apply to lands held by her as trustee, but by express terms of the statute applies to lands of the wife, that is, those of which she is the beneficial owner. As to those held by her as trustee, she is under no legal disability, but possesses the same capacity as though she were a *femme sole.* This must be the rule, as it is well settled that a married woman may be a trustee, even for her husband, and she may be compelled to execute her trusts. . . . This must in the very nature of things be so, especially in view of the fact that the husband was himself the *cestui que trust.* If then, the wife could have been required to convey the land in execution of the trusts, it must follow that her conveyance of it voluntarily made, amounts to a complete execution of the same. The hus-

band could not have been required to unite in the deed, and therefore the deed of the wife was sufficient. It therefore appears to us that the trust, found by the court to exist, may be proved to show that the deed made was in execution of such trust, and that it was sufficient for such purpose."

In *Hardin* v. *Darwin*, 66 Ala., 55, a well considered case, it is said: "The principle is well settled, without conflict among the authorities, that a married woman could, at common law, act as trustee, not being incapacitated to do so by the fact of coverture. 1 Bishop, Mar. Women, 700; 2 Id., 115; 1 Perry on Trusts, 48-49; Hill on Trustees, 48; Lewin on Trusts & Trustees, 34-35. And the principle is, in a measure, strengthened by the policy of modern legislation, which has established a system of "married women's laws," encouraging the tenure of *femmes covert* of separate estates in their own name and for their own benefit, and conferring on them the right to sue and be sued alone in certain cases, and authorizing them to devise or bequeath such property as if they were *femmes sole*. Const. 1875, art. X, 6-7; Code, 1876, 2704-2713, 2892.

"The wife's power as trustee, over such property as she may hold in trust seems also to be well settled. Chancellor Kent says, 'She may transfer a trust estate, by lease and release, as a *femme sole*.'—2 Kent's Com., 151. It is added in Bishop on Married Women, 700, that 'she may execute a power of attorney to convey such an estate, and a conveyance under it will be good. She

may, likewise, bring suits as trustee, which has been allowed where her husband joined as plaintiff with her.'

"In *Gridley* v. *Wynant,* 23 How. (U. S.), 500, it was said by Campbell, J.: 'There is no incapacity in a married woman to become a trustee, and to exercise the legal judgment and discretion belonging to that character. A trustee, in equity, is regarded in the light of an instrument, or agent, for the *cestui que trust,* and the authority confided to him is in the nature of a power. It has long been settled that a married woman may execute a power, without the co-operation of her husband.' And it has never been doubted, we may add, that she may act as agent, either for her husband or a stranger, and that coverture takes from her no capacity in this respect. 1 Bishop on Married Women, 701; *Land* v. *Waters,* 47 Ala., 624. And where there is an agreement, express or implied, on the wife's part, to convey to the husband on request by him there is a clear resulting trust. 2 Story's Eq. Jur. (12 Ed.), 1201-C, note 1; 2 Bishop on Mar. Women, 124; *Cotton* v. *Wood,* 25 Ia., 43; also *Cairns* v. *Colburn,* 104 Mass., 274; *Whitten* v. *Whitten,* 3 Cush., 191, 197; *Fox* v. *Doherty,* 30 Ia., 334."

There is no statute in Tennessee changing the common law on this subject. Those of North Carolina and Tennessee, to which we have referred, were not intended to restrict the capacity and powers of married women, but to enlarge them, and they apply only to conveyances of lands held by *femmes covert* in their own right.

A married woman in Tennessee, when not restricted by the muniments of title under which she holds, may also convey lands held by her as a separate estate without the joinder of her husband. *Barnum* v. *Le Master,* 110 Tenn., 640; *Vick v. Gower,* 92 Tenn., 391; *Dewey* v. *Goodman,* 107 Tenn., 253. This however, does not affect this case.

We are therefore of the opinion that in this State a married woman may accept, hold, and execute a trust relating to real estate, and that she has the power, in the execution of the trust, to convey real estate without the concurrence of her husband or his joinder in the conveyance made by her; and that this rule extends to trusts in which the husband of the trustee is the beneficiary, and to conveyances made in its execution directly to him.

It is also contended by the plaintiff in error that, since the defendant in error concedes the parol trust created in his favor to have been tainted with fraud, it is void, and this court will not enforce it. This would be a very serious question, and we think a fatal one, to the case of the defendant in error but for the fact that the trust has been executed by the conveyance made to him by Mrs. Waller, and there is now no effort in this case to enforce it. The defendant in error now has both the legal and equitable title to the property in question, and the previous fraud will not bar him from a recovery upon a contract in relation to it, or for trespass com-

mitted upon it. *Butlar* v. *Butlar* (N. J. Eq.), 57 Atl. Rep., 722; *Bolton* v. *Pittney,* 46 N. J. Eq., 610.

It results, therefore, that there is evidence in the record tending to show, and we think sufficient for that purpose, that the defendant in error was the sole and absolute owner of the houses insured and destroyed, and that he was seized in fee of the lots upon which they were erected, as covenanted in the policy, and therefore this assignment of error must be overruled.

Other assignments of error were disposed of in an oral opinion. Judgment affirmed.