## PARKER v. BOWLES.                    { Aug. 11, 1876.

### *Partnership assets—Rights of creditors.*

A and B were tenants in common of a saw-mill, with the land and appurtenances conveyed to them by separate deeds, each owning an undivided half, and each furnishing the purchase-money for the share conveyed to him.   They subsequently formed a co-partnership, and entered into a parol agreement to consider the real estate partnership property, using it in their partnership business.   *Held,* that it was not liable in equity to the payment of the partnership debts as against the separate creditors of the co-partners, who had given credit and taken security thereon from them upon the strength of their owning the property as tenants in common.

The co-partners, while the firm was in existence, expended a portion of their partnership funds in making permanent improvements upon said real estate, and afterwards settled and adjusted all matters between themselves.   A controversy arose between their separate and co-partnership creditors as to which was entitled to hold said real estate for the payment of their respective claims, either for its full value or to the extent of the improvements.   *Held,* that such use of the partnership funds was not a fraud in law, it not appearing that any actual fraud was intended.

FROM GRAFTON CIRCUIT COURT.

MOTION for judgment on the report of a referee, agreed upon under the statute and returned to the circuit court.   The parties, by a written submission, made December 4, 1873, agreed to submit to Hon. Asa Fowler the claim of Parker & Young upon one undivided half of the saw-mill building in Lisbon village, and appurtenances and land with said saw-mill, by virtue of a mortgage from Jonathan K. Atwood to said Parker & Young, dated January 10, 1868, said property being claimed by said Bowles and Atwood, and liable in equity to the pay-

ment of the partnership debts of Bowles & Atwood. It was further agreed, that in case the claim of Bowles was not valid, and that Parker & Young could hold said property under the mortgage as against the creditors of Bowles and Atwood, then the referee was to determine the amount of the debt which was secured by said mortgage. It was further agreed, that the award of the referee in writing might be filed in the circuit court for the western district of Grafton county, and, upon notice to the adverse party, the court might order judgment. It was further agreed, that, if either party should request, the referee should draw up a case presenting the points of law involved in the controversy for the consideration of the court at the law term, which court should have power to correct errors of the referee in matters of law. It was further agreed, that in case the arbitrator should find the property of said Atwood, described in said mortgage, subject to the liabilities and equities of said partnership, the arbitrator should then ascertain and decide what and how much the equities and liabilities were.

In accordance with this agreement the referee heard the parties, and made the following report and statement of facts:

"He finds that said Parker & Young are entitled to hold one undivided half of the saw-mill building in Lisbon village, and the appurtenances and land with said saw-mill, subject to a prior mortgage thereof from one Jonathan K. Atwood to Erastus Fisk for nine hundred and fifty dollars and interest, by virtue of a mortgage thereof to them from said Atwood, dated January 10, 1868; that said Atwood's interest in said undivided half of said premises was, at the date of said mortgage, the individual property of said Atwood, and not the property of the firm of Bowles & Atwood, and that said Parker & Young are entitled to hold said Atwood's interest in said undivided half of said premises to secure the payment of their debt against said Atwood, secured by said mortgage, in preference to the creditors of said firm of Bowles & Atwood, and awards accordingly. He further awards that said Jonathan H. Bowles shall pay to said Parker & Young the costs of reference, taxed at, &c."

STATEMENT OF FACTS.

The referee, at the request of Bowles, reported the following statement of facts in evidence before him at the hearing, and upon which he made the foregoing award:

Prior to April 4, 1859, the mortgaged premises, together with the property hereinafter mentioned, as conveyed by Atwood and Bowles to Martin & Howe, had been owned and carried on by the partnership firm of I. Goodall & Son, and they on that day conveyed the same as partners by deed, acknowledged April 25, 1859, to Jonathan H. Bowles and Silas T. Brown, of Lisbon, July 12, 1859. Bowles & Brown conveyed one undivided eighth of the property conveyed to them by I. Goodall & Son to each of six other persons; and the eight persons thereafter holding the property formed a partnership, opened partner

ship books, and managed the property under the name of the Lisbon Manufacturing Company, no one of the eight contributing anything to the partnership except his interest in the property. The partnership agreement was, to use the mill, and operate it for the joint benefit; and if any one wished to sell out, he should offer his interest first °to the company. Bowles and Erastus Fisk, two of the eight, finally bought out the other six, and owned and operated the property together until Fisk sold out his half of the property to Atwood, April 21, 1866, as hereinafter stated. No dividend of profits was ever made by this firm.

Parker & Young claimed to hold the interest of Atwood in one undivided half of the mill, land, and appurtenances mentioned in said submission, by virtue of a mortgage thereof to them by said Atwood, duly executed and acknowledged January 10, 1868, and duly recorded January 11, 1868. The mortgage was made to secure two notes of Atwood to the mortgagees,—one for $1,046.33, dated March 22, 1867, the other of even date with the mortgage for $492.52. This indebtedness of Atwood to the mortgagees had been contracted within two or three years prior to the date of the mortgage, partly before and partly after Atwood's purchase of the property in controversy. In the mortgage, which was written by Young, one of the mortgagees, the property mortgaged is described as owned by Atwood in company with Bowles. Atwood acquired his title to the mortgaged premises by deed from Fisk, dated April 21, 1866, conveying to him an undivided half of the mill, land, and appurtenances, subject to a lease of the upper story of the mill, with water-wheel, &c., to Bowles and Atwood for five years, who had sublet the same to the firm of Norris, Atwood & Co. for the manufacture of bobbins. Atwood agreed to pay Fisk for the half of the property purchased of him the sum of $2,450, of which sum he paid down of his own private funds $1,000, and gave a mortgage of the premises to secure the balance of $1,450, in three notes, two of $500 each and one for $450.

It appeared that Atwood purchased half the mortgaged premises, with an understanding that after he made the purchase he would go into partnership with Bowles upon the premises, or a portion of them, in the business of manufacturing lumber, &c.; and that soon after they did transact a kind of partnership business together, and used a portion of the mortgaged premises in the prosecution of that business, and let another portion of them to other parties.

On or about June 22, 1866, Atwood and Bowles sold a portion of the mill property,—one half of which had been purchased by Atwood of Fisk,—to Martin & Howe, for the sum of $2,000. Of this money Atwood received $500, and therewith paid Fisk one of the $500 notes he had given him, and thereby induced him to release his mortgage on the portion of the property sold by Atwood and Bowles to Martin & Howe. Of the residue of the money, some was used by Bowles and Atwood in the partnership business, but what became of the balance did not appear.

It appeared that Atwood purchased the half of the mill property with the expectation of going into partnership in the lumbering business with Bowles, and did go into partnership; and that Atwood and Bowles considered and agreed between themselves to treat the real estate which they occupied in transacting their partnership business as partnership property; but there never were any written or definite verbal articles of co-partnership between them, nor any definite agreement between them as to co-partnership. Each of them had other business besides the lumbering business, and there were never any books of account made and kept by the partners, or either of them, showing what each contributed to the partnership, or how the business was to be conducted, or how the profits or losses were to be shared between them. Atwood was in partnership with another person or persons, and a portion of the mill property was leased by Bowles and Atwood to Atwood and his other partner or partners for a term of years. Bowles also had other business.

After Atwood purchased his half of the mill property, and after the sale of a portion of that property by Bowles and Atwood to Martin & Howe, Bowles and Atwood jointly, as partners, made improvements and repairs upon the residue of the property, partly before and partly after the mortgage by Atwood to Parker & Young, put in a new wheel and made an addition to the mill, for which they paid with money borrowed on their joint notes as partners, sometimes with other names thereto—the note for the wheel being dated March. 23, 1868, for $1,080.70—which were subsequently paid by them from the proceeds of their business or otherwise. The whole value of these improvements and additions did not very distinctly appear, but it was very considerable, probably some $3,300 in all.

Parker & Young had knowledge that Bowles and Atwood were carrying on business together as partners, and as such occupied and controlled part of the mill property. January 1, 1868, Mr. Young, as scrivener, wrote a lease from Bowles and Atwood, as partners, to Atwood & Quimby, of a portion of the mill property; but they had no knowledge or information that Bowles and Atwood between themselves considered the mill property as belonging to the partnership, and they always regarded that property as owned by Bowles and Atwood as tenants in common; and they gave credit to Atwood on the strength of his ownership of the undivided half of the mill property, subject to the mortgage to Fisk for the mortgage debts so far as they accrued after Atwood's purchase of the property.

Bowles and Atwood had frequent settlements of all matters between themselves as partners, or as jointly interested together in business. The last settlement occurred February 1, 1869, and included everything between them to that date.

Upon the foregoing facts the counsel for Mr. Bowles claimed that the mortgaged property had become the property of the firm of Bowles & Atwood, whose creditors were entitled to hold the same in preference to Parker & Young, notwithstanding their mortgage; while the counsel

for Parker & Young claimed that, as Atwood bought and paid individually whatever had been paid for the mortgaged property with his individual funds, and the record title was in him, they were entitled to hold the property under their mortgage,—especially as they had no knowledge or information to the contrary, and had relied on Atwood's ownership of the property in giving him credit for the mortgage debts.

The questions of law arising upon the foregoing statement of facts were transferred to the superior court by STANLEY, J., C. C.

*Bingham & Mitchell,* for Parker & Young.

*Carpenter,* for Bowles and Atwood.

SMITH, J. There is no evidence in this case that the affairs of the Lisbon Manufacturing Company are unadjusted. No creditors of that company appear here claiming to have this real estate applied in payment of their claims. There is no suggestion that there are any such creditors. It would seem clear, then, that Bowles and Fisk were tenants in common of these premises, April 21, 1866, divested of any trust on account of their previous partnership affairs.

On that day Fisk conveyed his undivided half of the premises to Atwood for $2,450, a portion of which sum Atwood paid in cash out of his own funds, and gave his own notes for the balance, secured by a mortgage upon the premises. He thereupon became tenant in common with Bowles of the premises, the interest of each being an undivided half. The title stands, then, precisely as though Atwood and Bowles, April 21, 1866, took a conveyance of the premises, each in his own name, of an undivided half, and paid for the same with his own means. This was in fact what Atwood did on that day ; and Bowles, whose title had undergone various changes between April 4, 1859, and April 21, 1866, on the latter date stood in the same position as his co-tenant, Atwood. As the property, then, was not conveyed to Bowles and Atwood as partners, and was not paid for out of partnership funds, there is no ground for claiming that it was then partnership property. Have they so conducted since its purchase as to give either an equitable lien upon it as against the other for the payment of partnership debts ? Has it become clothed with a trust so as to secure a beneficial interest in the owners for the benefit of their partnership creditors until the purposes of their partnership shall be accomplished ?

It is well settled, that, where real estate is purchased for partnership purposes and on partnership account, it is wholly immaterial, in the view of a court of equity, in whose name or names the purchase is made—whether of one partner, or of all; whether in the name of a stranger, or of one of the firm. In either case, let the legal title be vested in whom it may, it is in equity deemed partnership property, and the partners are the *cestuis que trust. Jarvis* v. *Brooks,* 27 N. H. 37, 67 ; *Cilley* v. *Huse,* 40 N. H. 358. Real estate so acquired is considered at law as the several property of the partners, as tenants in common ;

yet that is so held subject to a trust arising by implication of law, by which it is liable to be sold, and the proceeds brought into the partnership fund, so far as is necessary to pay the debts of the firm and to pay any balance which may be due to the other partners on a final settlement, and cannot be held by the separate owner except to the extent of his interest in such final balance; and when a firm is insolvent, the whole of the property so held must be brought into the partnership fund in order to satisfy the partnership creditors. *Burnside* v. *Merrick*, 4 Met. 537, 541.

The referee has found that there was no actual notice, and no written agreement, and of course no record by which any conversion of property from separate to partnership estate was effected. He has also found that Atwood purchased half of the mill property with the expectation of going into partnership in the lumbering business with Bowles, and did go into partnership with him, and that they considered and agreed between themselves to treat the real estate which they occupied in transacting their partnership business as partnership property. This agreement was not in writing signed by them, and it therefore seems clear that no trust concerning this land could be created so as to secure a beneficial interest in the owners for the payment of their partnership liabilities by their parol agreement. Indeed, our statute expressly forbids it. Gen. Stats., ch. 121, sec. 13. When land is purchased with partnership funds and for partnership purposes, there is an implication of law that the land is held for the partnership. But where it is purchased with the separate funds of the partners, it cannot, by a verbal agreement between themselves, be converted into co-partnership property, because no trust in lands can be created unless by writing, except such as arises or results by implication of law; and parol evidence is not admissible to prove any declaration of trust, or agreement of the parties for a trust, although it is received to establish a fact from which the law will raise or imply a trust. *Farmington* v. *Barr*, 36 N. H. 86; *Moore* v. *Moore*, 38 N. H. 382.

I do not understand that the partnership creditors in this respect stand any differently from the partners themselves. The equities of such creditors are to be worked out through the medium of that of the partners. Story's Part., sec. 93, note to 6th ed.

The next question arises as to the effect of the improvement of these premises from funds withdrawn from the partnership assets. Do Bowles and Atwood hold the estate so improved, to the extent of such improvements, as partnership property, and for the benefit of the partnership creditors? The referee reports that such improvements were made to the amount of some $3,300, thereby doubling the original value of the land remaining after the conveyance to Martin and Howe of a portion of the premises. The withdrawal of partnership funds to any amount from the partnership business, and the permanent investment of them in the improvement of real estate, which they did not own as partners, although belonging to them as tenants in common, has the same effect, practically, as though Bowles and Atwood had taken an

equal amount of their assets for division between themselves. It is a well-known rule, governing the relation of partners, that neither can have an ultimate and beneficial interest in the capital, against the consent of the other, until the debts are paid and the account settled ; and this rule extends to real estate held in partnership, so that it cannot be conveyed away by one of the partners alone, and against the consent of the other, without a breach of the trust with which the land is clothed. But that rule does not apply to this case.

The defendants' counsel contends that all the additions ought to be considered as partnership property,—at least, everything which can be separated from the realty without too much injury. It appears from the report, that Bowles and Atwood had frequent settlements of all matters between them as partners, the last occurring February 1, 1869, which was after the improvements had been made. As between the partners, it is quite immaterial whether each partner must be considered as having taking out of the common stock the amount used in repairs and added it to his separate property, or otherwise. They were equal owners of the partnership, so that each one would have contributed his just share towards the improvements upon the real estate ; and the only question would be, whether the abstraction of that amount of property from the partnership funds would be in law a fraud upon the creditors, —for the report must be taken to have established the fact that there was no actual fraud.

I think it would be going a great way to hold that every material withdrawal of any portion of the partnership funds to the separate use of the partners would be a fraud in law, when no actual fraud was intended ; and that in every case funds so withdrawn, if they could be identified, might be followed into the hands of innocent parties, and applied for the benefit of partnership creditors. I have seen no authority which leads to this conclusion. On the contrary, it seems to be well settled, as I understand the cases, that such withdrawal of assets may be done, provided there is no *mala fides* in fact. Story's Part., sec. 360, and authorities cited ; *ex parte Ruffin,* 6 Ves. 119 ; *ex parte Sprague,* 4 De G. M. & G. 866 ;—see, also, Story's Part., sec. 377 *et seq.*

A conveyance by one partner of real estate belonging to the partnership to one who had no notice, actual or constructive, of the trust, must probably be held valid. But if a person knows that a particular real estate is the partnership property of two or more, and he attempts to acquire a title to any part of it from one alone without the knowledge or consent of the other, there is no hardship in holding that he takes such title at his peril, and on the responsibility of the person with whom he deals. *Dyer* v. *Clark,* 5 Met. 562, 580. But it appears, from the facts before us, that the plaintiffs, when they took the mortgage from Atwood, had no knowledge or information that Bowles and Atwood between themselves considered the mill property as belonging to the partnership, but, on the contrary, they always regarded that property as owned by Bowles and Atwood as tenants in common, and gave credit to Atwood on the strength of his ownership of an undivided half of it, so far as

their claim accrued after Atwood's purchase of it. This being so, even if the property were partnership property, the plaintiffs, having no notice of the trust, are not to be postponed until the partnership creditors have been satisfied.

The only question remaining is, whether knowledge by the plaintiffs that this property was occupied and used by the partnership was constructive notice that it was owned by the partnership. This would depend upon the fact, whether, under all the circumstances which were known to the plaintiffs, such occupation by the partnership was so inconsistent with ownership separately by the partners, that the plaintiffs, in the exercise of reasonable care and judgment, ought to have taken notice and made inquiry, and if the result of such inquiry would have been knowledge that the property had been converted from separate to partnership. This is a mixed question of law and fact, which the referee has found in favor of the plaintiffs, and I do not see in the case anything from which I can find that the referee has mistaken the law in so finding the fact.

I think the referee was right in the conclusion reached by him from the facts reported, and that the plaintiffs are entitled to judgment on the report.

CUSHING, C. J., and LADD, J., concurred.

*Judgment on the report for the plaintiffs.*