In re Robert L. BROWN, Debtor.

Sharon MILLS, Plaintiff,

v.

Scott N. BROWN Jr., Trustee, Defendant.

Bankruptcy No. 93–13786.
Adv. No. 95–1004.

United States Bankruptcy Court,
E.D. Tennessee.

June 2, 1995.

Shelley D. Rucker, Miller & Martin, Chattanooga, TN, for plaintiff.

Brown, Dobson, Burnett & Kesler, Scott N. Brown Jr., Chattanooga, trustee/defendant.

### MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

This adversary proceeding is before the court upon cross-motions for summary judgment filed by the plaintiff, Sharon Mills, and the defendant, Scott N. Brown Jr., the Chapter 7 trustee ("Trustee"). Having considered the briefs and exhibits filed by the parties and having concluded there is no genuine issue of material fact such as might require trial, the court will grant summary judgment in favor of the plaintiff for the reasons that follow.[1]

### I.

The undisputed facts show that sometime in the spring of 1985, Sharon Mills learned that a parcel of real estate near her residence was for sale. She resolved to buy it,

---

1. Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056; Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

but to protect her identity and her privacy she had the debtor, Robert L. Brown, an attorney, make the offer to purchase the property as though he were the buyer. On April 5, 1985, prior to the purchase of the property by the debtor, Miss Mills entered into a letter agreement with him in which Miss Mills agreed that the debtor would acquire and hold the property for her as trustee, that she would be solely responsible for the payment of property taxes and all other charges against the property, and that the trust might be terminated at any time by the trustee's conveyance of the property to her. It was the intention of the debtor and Miss Mills to create a trust in which the debtor would hold the legal title to the property and Miss Mills would have the beneficial interest. Pursuant to these intentions and the letter agreement, the debtor acquired the property for $86,500, taking title in the name of "Robert L. Brown, unmarried," on May 6, 1985. Miss Mills paid the purchase price for the property through the debtor, and she has since paid all taxes due on the property.

On October 12, 1993, creditors filed an involuntary Chapter 7 against the debtor. Upon learning that the bankruptcy trustee planned to sell the property in question as an asset of the debtor's estate, Miss Mills filed this adversary action to block the sale and force the bankruptcy trustee to convey the subject property to her. Both parties have filed motions for summary judgment, and those are now before the court for determination.

## II.

### A.

■ The broad issue in this proceeding is whether the bankruptcy trustee may bring into the estate property the debtor holds in an express trust for the use and benefit of another. More particularly, the issue is whether the bankruptcy trustee's strong-arm powers under 11 U.S.C. § 544(a)(3) should be construed (1) to create a legal fiction that assumes the transfer of all the debtor's real estate to the trustee as bona fide purchaser at the commencement of the case, or whether, instead, § 544(a)(3) should be construed (2) only to allow the bankruptcy trustee to avoid an actual transfer of real estate that was once property of the debtor and that has been transferred by the debtor to someone else. There is no question that the bankruptcy trustee has the transfer avoidance powers mentioned. The pivotal question in this case is whether he also has the "status" powers of a bona fide purchaser without regard to the existence of an actual transfer of property of the debtor.

■ The question is important because Tennessee law provides that a bona fide purchaser of real estate from a private, non-bankruptcy trustee prevails over the beneficiary of the trust in a contest over the title to the property, even where the trustee has sold the property in breach of his trust. *Emerson v. Maples (In re Mark Benskin & Co.),* 161 B.R. 644, 652 (Bankr.W.D.Tenn.1993); *Insurance Co. of Tennessee v. Waller,* 116 Tenn. 1, 8, 95 S.W. 811 (Tenn.1905); *Chadwell v. Wheless,* 74 Tenn. 312, 322 (Tenn. 1880); *Eaves v. Gillespie,* 31 Tenn. 128, 132 (Tenn.1851); *Adrian v. Brown,* 29 Tenn.App. 236, 196 S.W.2d 118, 121 (1946). Thus, if the bankruptcy trustee is to have the status of a bona fide purchaser and grantee of all the debtor's real estate on the date of the bankruptcy petition, he will defeat Miss Mills' beneficial interest in the property, and he may then sell it for the benefit of the creditors.

In deciding on the proper construction of § 544(a)(3), the court must take into consideration related provisions found in §§ 541(a),[2] 541(d),[3] and 550(a)(1), (2)[4]. For-

---

**2.** 11 U.S.C. § 541(a) provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim

tunately, a good deal of judicial writing has already been devoted to the difficult issue in this case and so to the possible construction of the foregoing statutes. In this court's opinion, the best view of the interrelationship of the relevant subsections in § 541 is contained in *Billings v. Cinnamon Ridge, Ltd. (In re Granada, Inc.)*, 92 B.R. 501, 508 (Bankr.D.Utah 1988), wherein the court explained that the exclusion of equitable interests from the estate, as required by § 541(d) applies only to the estate considered *ab initio*, that is, the estate defined by § 541(a)(1) and (2). Section 541(d) does not purport to exclude from the estate any equitable interest in property that might be recovered by the bankruptcy trustee under § 541(a)(3). Thus, the fact that the debtor in this case held only legal title to the property as of the commencement of the bankruptcy case does not by itself rule out the possibility that the equitable interest in the property might end up in the estate by virtue of its recovery by the bankruptcy trustee under § 541(a)(3). By following § 541(a)(3) to § 550(a) and thence to § 544(a), the trustee arrives at § 544(a)(3) as the source of whatever strong-arm powers he has to wield in this case. Section 544(a) provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any *transfer of property of the debtor* or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commence-

against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.
(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

3. 11 U.S.C. § 541(d) provides:

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to

ment of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exits; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits *such transfer* to be perfected, that obtains the status of a bona fide purchaser and has perfected *such transfer* at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (emphasis added).

As previously noted, the crucial question about this section, and the one that has created confusion among the courts, is whether it grants the bankruptcy trustee one power or two. There is no doubt that the trustee is granted the power to "avoid any transfer of property of the debtor ... that is voidable by a bona fide purchaser of real property...." This language normally allows the bankruptcy trustee to recover transfers of property actually made by the debtor if a bona fide purchaser from the debtor could have defeated the transfer under state law. The statute also contains language that gives the bankruptcy trustee

the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

4. 11 U.S.C. § 550(a) provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.

the rights and powers of ... a bona fide purchaser of real property ... from the debtor, against whom applicable law permits *such transfer* to be perfected, that obtains the status of a bona fide purchaser and has perfected *such transfer* at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (emphasis added). Some courts read this language as conferring on the trustee the *status* of a bona fide purchaser for all purposes, whether or not any real transfer of property from the debtor has taken place, and, indeed, this may be considered the majority rule at present. *National Bank of Alaska v. Erickson (In re Seaway Express Corp.)*, 912 F.2d 1125, 1128 (9th Cir.1990) ("Under 11 U.S.C. § 544(a)(3), the trustee is granted, *in addition to* the avoidance powers, 'the rights and powers of ... a bona fide purchaser of real property ... from the debtor.'"); *Belisle v. Plunkett*, 877 F.2d 512, 515 (7th Cir.) ("Section 544(a)(3) allows the trustee to have a bona fide purchaser's rights or avoid a transfer, so a 'transfer' by the debtor cannot be a necessary condition of the exercise of the strong-arm power."), *cert. denied*, 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989); *Billings v. Cinnamon Ridge, Ltd. (In re Granada, Inc.)*, 92 B.R. 501, 505 (Bankr.D.Utah 1988) ("This § 544(a)(3) power to avoid any transfer of property of the debtor that is voidable by a bona fide purchaser is in addition to the trustee's § 544(a)(3) position of having the 'rights and powers' of a bona fide purchaser....").[5]

■ These cases are rendered doubtful, however, by the very careful exegesis of the statute found in *In re Mill Concepts Corp.*, 123 B.R. 938 (Bankr.D.Mass.1991), wherein Judge Queenan held that subparagraph (3) of § 544(a) limits the trustee's powers to those of avoiding transfers of real property made by the debtor. Without reiterating all the reasoning, what *Mill Concepts* recognizes is that the two grants of power in § 544(a), the avoidance powers and the status powers

("rights and powers of"), do not both descend into subparagraph (3), which is limited by its language to situations involving real transfers by the debtor. *Id.* at 941. This may be clearly seen once one recognizes that subparagraph (3) contains two instances of the phrase "such transfer," but that these identical references refer to different transfers. The first instance of the phrase, "such transfer," must refer to some other transfer, because "such" is a referential word. When one scans the text of the statute above this first instance for the necessary referent, the only other transfer mentioned is the one in the body of subparagraph (a), the preamble, and it refers only to the trustee's power to avoid "any transfer of property of the debtor...." Thus, the first instance of "such transfer" refers to a *real* transfer of property of the debtor. According to the express language of subparagraph (3), this real transfer of property by the debtor must also be perfectible by the transferee under state law before the bankruptcy trustee can avoid it.

The second instance of "such transfer" in subparagraph (3) cannot refer to the same referent as the first instance does because its context is entirely different. It cannot refer to "any transfer of property of the debtor," as the first instance does, because it clearly refers to a bona fide purchaser who "has perfected such transfer...." No bona fide purchaser would perfect such a transfer by the debtor because, if the same referent were used, the transfer in question would necessarily be to *someone else.* Such a reading results in nonsense and compels the conclusion that the second instance of "such transfer" refers, not to the real transfer of property from the debtor to a third party, but to the hypothetical transfer (the purchase), posited in subparagraph (3), from the debtor to a bona fide purchaser. It means merely that the fiction created by subparagraph (3) includes a bona fide purchaser who has perfected his purchase against third parties, since perfection against the debtor is entirely unnecessary,[6] and, indeed, something of a

---

**5.** The United States Court of Appeals for the Sixth Circuit has not yet taken a position on this subject. *Craig v. Seymour (In re Crabtree)*, 871 F.2d 36, 38 (6th Cir.1989); *see XL/Datacomp,*

*Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir.1994).

**6.** Like most states, Tennessee enforces instruments as between the parties to them without

contradiction in terms. Read in this way, subparagraph (3) is limited to situations in which there has been a real transfer (first instance) of the property of the debtor to a transferee who could have perfected his interest against third parties under state law. Opposed to him in a contest over the property is a hypothetical bona fide purchaser of the same property from the debtor (second instance) who is presumed to have perfected his purchase as of the commencement of the case. In the context of this subparagraph, the first transfer is real, the second hypothetical. Thus, there is no part of subparagraph (3) that does not assume a real transfer of the property of the debtor, and its whole structure makes no sense without that assumption. The appropriate conclusion is that § 544(a)(3) is limited to the avoidance of real transfers.

The principal objection to this construction of subparagraph (3) is that it seems as first blush to make the "rights and powers" grant in the preamble, § 544(a), surplusage. The court in *Mill Concepts* explained that this grant of status, in addition to the grant of avoidance powers, pertains to subparagraphs (1) and (2), so as to enable the bankruptcy trustee "to defeat the interest of the true owner in situations where the ostensible ownership of another party gave rights to that party's creditors under state law," such as those envisaged by U.C.C. § 2–402 and 2–326. *Id.* at 943. The court concluded:

> Thus it is perfectly consistent for the trustee to have all the powers of a judicial lien or judgment creditor under subparagraph (a)(1) and (2), and yet have only the more restricted power to avoid transfers of real property under subsection (a)(3).

*Id.* at 944. This court finds that to be a plausible explanation which allows a sensible reading of the entire statute. It also allows the reconciliation of § 544(a)(3) with § 541(d):

If under § 544(a)(3) the trustee has the rights of a bona fide purchaser for value with respect to real property which has been transferred to, as well as by, a debtor, the trustee of course prevails over any trust beneficiary under general principles. But this flies in the face of the wording of § 541(d), as well as its legislative and judicial history.... A literal interpretation of § 544(a)(3) so as to apply the statute only to transfers *by* the debtor brings harmony under §§ 541(d), 541(a)(3), and 544(a)(3) in their application to trusts.

*Id.* at 945. Accordingly the court will adopt the rationale of *Mill Concepts.*

If § 544(a)(3) limits the bankruptcy trustee to avoiding transfers of real property made by the debtor, then it has no application to the case at bar because the debtor never transferred property to Miss Mills. Instead, he received property from her. Although the debtor has legal title to the property, the equitable interest in the property has never been his. If the equitable interest in this property cannot be brought into the estate under § 544(a)(3), and this court holds it cannot be, then Miss Mills' interest in the property is not property of the debtor's estate and does not pass into the hands of the bankruptcy trustee.

### B.

Section 544(a)(3) contains another requirement that would prevent the bankruptcy trustee from taking Miss Mills' beneficial interest in the property, even if the court were to hold that § 544(a)(3) were not limited to the avoidance of real transfers. Under § 544(a)(3), the hypothetical bona fide purchaser must be one "against whom applicable law permits such transfer to be perfected...." Thus, no matter what both instances of "such transfer" refer to, the statute still *defines* bona fide purchaser as one *against whom* perfection is possible.[7] Unless the

---

regard to whether they have been perfected by registration.

**Effect of Instruments With or Without Registration.**—All of the instruments mentioned in § 66–24–101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only

from the noting thereof for registration on the books of the Register, unless otherwise expressly provided.

Tenn.Code Ann. § 66–26–101.

**7.** As the Ninth Circuit has explained it, the purpose of the limitation is to avoid penalizing those

bankruptcy trustee is that kind of bona fide purchaser, the statute grants him no powers: he can neither avoid transfers nor assert his "rights and powers." That raises the question of whether Miss Mills could have done anything under state law to perfect her interest as the beneficiary of the trust.

The *only* manner in which Miss Mills could have perfected her beneficial interest in the property as against a purchaser from her trustee would be to have recorded her trust instrument under applicable state law so as to give the kind of constructive notice of her interest that would legally destroy the innocence of a putative bona fide purchaser. That would have been impossible for her to do in this case. In 1985, when the trust agreement was entered into, Tennessee's registration statutes did not permit the registration of trust agreements. In 1989, Tenn. Code Ann. § 66–24–101 was amended to provide for the registration of "[a]ll trust agreements or a summary or abstract of such agreements." Prior to that time, however, the statute provided for the registration only of instruments involving "a *conveyance* or *transfer* of some kind from the *record owner*." *Green v. Hooton*, 624 S.W.2d 898, 900 (Tenn.App.1981), *permission to appeal denied* Dec. 14, 1981. In *Green*, the court went on to hold that "a private trust agreement is not one of the instruments that may be registered under T.C.A. § 64–2401, and because of that fact it is not void as to creditors because of the effect of T.C.A. § 64–2603." *Id.* The statutes cited in *Green* are the precursors of Tenn.Code Ann. §§ 66–24–101 and 66–26–103.

From the foregoing, it is clear that the Tennessee law extant at the time the trust agreement was entered into [8] did not provide

or allow for the filing of the agreement. Therefore, Miss Mills could not have "perfected" her beneficial interest against a bona fide purchaser from her trustee. It is true, of course, that she might have caused the debtor to take title to the subject property in the name of "Robert L. Brown, trustee," instead of "Robert L. Brown, unmarried." However, there is no Tennessee statute requiring that property held by a trustee be held in the name of that trustee as trustee. While that form of title-holding would effectively destroy the innocence of a putative bona fide purchaser, *see Hall v. Hall,* 604 S.W.2d 851, 853 (Tenn.1980), it would not fall within the generally accepted meaning of "perfection," which means the giving of constructive notice by recordation or registration under applicable state statutes. *Blevins v. Johnson County,* 746 S.W.2d 678, 682–83 (Tenn.1988). It would not have constituted "perfection" as that term is generally understood, and therefore Miss Mills' failure to require this form of conveyance into her trustee is irrelevant. Because she could not have registered her interest under the applicable statute, she could not have perfected that interest against a bona fide purchaser. Therefore, the bankruptcy trustee is not "a bona fide purchaser . . . against whom applicable law permits such transfer to be perfected," and, failing to meet this definition, he may not take Miss Mills' beneficial interest in the property.

## III.

For the foregoing reasons, this court is of the opinion that Miss Mills' beneficial interest in the subject property is excluded from being the property of the debtor's bankruptcy estate by § 541(d) and that it cannot be

---

creditors who had no system available to them for the perfection of their interests.

The legislative history shows that Congress intended that "the bona fide purchaser test" should "not ... require a creditor to perform the impossible in order to perfect his interest." 124 Cong.Rec. 32400 (Statement of Sen. Edwards).

... The full legislative history and the plain language of the statute make it clear that the Code does "not require a transferee to perfect a transfer against an entity with respect to which applicable law does not *permit* perfec-

tion." 124 Cong.Rec. at 32400 (emphasis added).

*National Bank of Alaska v. Erickson (In re Seaway Express Corp.),* 912 F.2d 1125, 1129 (9th Cir.1990).

8. The amendment of Tenn.Code Ann. § 66–24–101 in 1989 would not affect a trust agreement created in 1985 because the recording statutes are not thought to operate retroactively. *Harris v. Williford,* 165 S.W.2d 582, 584 (Tenn.1942); *Barbee Mill Co. v. State,* 43 Wash.2d 353, 261 P.2d 418, 421 (1953); *see* 26 C.J.S. *Deeds* § 73 (1956).

recovered and drawn back into the estate by §§ 541(a)(3) and 544(a)(3). Accordingly, the court will grant Miss Mills' motion for summary judgment and deny the trustee's.