**In re V. Gerald BELBA, Debtor.**

**Stephan M. RODOLAKIS, Chapter 7 Trustee, Plaintiff,**

**v.**

**Robert P. PEDONE, et al., Defendants.**

**Bankruptcy No. 92–42024 JFQ.
Adversary No. 96–4049.**

United States Bankruptcy Court,
D. Massachusetts.

Nov. 4, 1998.

Daniel I. Cotton, Wolfson, Keenan, Cotton & Meagher, Worcester, MA, for Debtor.

Stephan M. Rodolakis, Peters, Massad & Rodolakis, Worcester, MA, Trustee.

## DECISION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

When a partner goes into bankruptcy, the bankruptcy estate obviously acquires his partnership interest subject to any valid agreement among the partners concerning liquidation of partnership property. Suppose, however, the property is real estate whose record title is in the name of the partners as tenants in common, with no disclosure of the partnership. The trustee in bankruptcy then dons the armor of that shining knight of property law—the bona fide purchaser. Does the trustee in this role become a tenant in common free of the liquidation agreement? That is the question here. It is one whose answer requires a close reading of section 544(a)(3) of the Code and a review of its history.

Stephan M. Rodolakis (the "Trustee"), the chapter 7 trustee of the estate of V. Gerald Belba (the "Debtor"), has brought this action requesting a decree declaring him to be the outright owner, as a tenant in common, of a single family residence in Jackson, New

Hampshire (the "Jackson property").[1] The parties have submitted the case on agreed exhibits and a stipulation of facts. Relying upon these submissions, I set forth here my findings of fact and conclusions of law.

## I. FACTS

In 1986, during the boom in New England real estate, three individuals formed a partnership for the purpose of investing in New Hampshire real estate. The three were: V. Gerald Belba (the "Debtor"), of Worcester, Massachusetts, Edwin J. Furman ("Furman"), of Newbury, Massachusetts, and Robert P. Pedone ("Pedone"), then of Shrewsbury, Massachusetts. They named the partnership "VER Real Estate" ("VER"), after the initials of the first names of the Debtor, Furman and Pedone. Their partnership agreement was oral. Each was to have a one-third share of profits and losses. They agreed to make equal contributions of capital.

By deed dated May 29, 1986, Furman and his wife, for an undisclosed consideration, conveyed the Jackson property to the three partners as tenants in common. The deed made no mention of the partnership.

On January 31, 1987, VER purchased through separate deeds three condominium units in the Nordic Village Condominium complex located in Bartlett, New Hampshire. The total purchase price was approximately $360,000. These three deeds also ran to the partners as tenants in common, with no indication of the existence of the partnership. In part to finance this purchase, VER obtained a loan of $393,600 from North Conway Bank. As security for the loan VER granted the bank a mortgage covering the three condominium units and the Jackson property.

During the period 1989 through 1992, VER sold the three condominium units at decreasing prices, realizing a total sale price of $368,000. It was unsuccessful in attempting to sell the Jackson property. In April of 1992, after completing the sale of the last condominium unit, the partners agreed to dissolve and liquidate VER. At that time Pedone's capital contribution exceeded that of either of the others by at least $30,000. They agreed to remedy this disparity by liquidating the partnership through distributing the Jackson property to Pedone alone. On April 29, 1992, the three partners executed and delivered to Pedone a deed transferring the Jackson property into his sole name. Pedone delayed recording this deed until December 8, 1992 because he did not realize he was required to make the recording. VER labeled its federal tax return for the year 1992 its final return. The real estate boom having turned to bust, Pedone had difficulty selling the Jackson property. He eventually sold it to Furman's brother for $3,500 in cash plus assumption of the mortgage to North Conway Bank, whose balance was then about $60,000. Because of the depressed state of the New Hampshire real estate market, his only other alternative was to turn it over to the bank.

On June 29, 1992, the Debtor commenced the present bankruptcy case by filing a petition under chapter 11. The filing date was after the delivery and before the recording of the deed transferring the Jackson property to Pedone. On February 7, 1994, the case was converted from chapter 11 to chapter 7. The Trustee was appointed shortly thereafter.

## II. TRUSTEE'S RIGHTS AS BONA FIDE PURCHASER OF REAL PROPERTY

### A. *Avoidance of 1992 Transfer to Pedone*

Section 544(a)(3) of the Bankruptcy Code provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor,

---

1. The Trustee's complaint also sought to set aside a transfer of shares of stock in Bel–Fur Development Corporation to the defendant William H. McCann. That claim has since been settled under an agreement approved by the court.

against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (1994).

■ At the petition filing date, the deed to Pedone had not been recorded. As of then, therefore, a bona fide purchaser of the Debtor's interest in the Jackson property would take that interest free of the transfer reflected by the unrecorded deed. The Trustee says he has these same rights under section 544(a)(3).[2]

I agree. I treat the Trustee's rights as though the deed had never been executed and delivered to Pedone. Avoidance of the transfer does not, however, affect the existence of the partnership or the liquidation agreement among the partners. Without more, the Trustee gets just the Debtor's interest in the Jackson property.

## B. *Avoidance of Ownership Interest of Partnership*

The Trustee contends, however, that his rights as a bona fide purchaser make the bankruptcy estate a tenant in common in the Jackson property free of the interest of the partnership and the agreement among the partners to distribute the property to Pedone. Consideration of this contention involves both a review of partnership law and a further analysis of the Trustee's bona fide purchaser rights.

### *Partnership Law*

Because the Jackson property is located in New Hampshire, I consider the law of New Hampshire to be the governing law on this issue of real estate ownership. Arguably, Massachusetts law has relevance. The part-

ners may well have made their agreements in Massachusetts, where they all reside. The choice of law is in any event of no consequence. Both New Hampshire and Massachusetts have adopted the Uniform Partnership Act. *See* N.H.Rev.Stat.Ann. § 304–A (1997); Mass.Gen.Laws.Ann. ch. 108A (West 1998).

■ The dissolution of a partnership may be accomplished by the express will of any one or more of the partners. *See* N.H.Rev.Stat.Ann. § 304–A:31 (1997). Upon dissolution, the partnership is not terminated; it continues until a winding up of partnership affairs is completed. *See* N.H.Rev. Stat.Ann. § 304–A:30 (1997). Consequently, at the time of the bankruptcy filing VER had been dissolved but not terminated. This is so because the deed of liquidation had not been recorded. And of course now the Trustee has successfully avoided that entire transfer.

■ The Debtor's property rights as a partner are the following: (1) his right to specific partnership property, (2) his interest in the partnership, and (3) his right to participate in management. *See* N.H.Rev.Stat. Ann. § 304–A:24 (1997). If property is partnership property, a partner owns it as a tenant in partnership. *See* N.H.Rev.Stat. Ann. § 304–A:25 (1997).

The Uniform Partnership Act, as in effect in New Hampshire, contains no provision establishing the ownership of property which is alleged to be partnership property but whose record title stands in the names of the partners with no disclosure of the partnership. Section 8 comes the closest, providing in part as follows: "Unless the contrary intention appears, property acquired with partnership funds is partnership property." N.H.Rev.Stat.Ann. § 304–A:8 (1997).[3] Nei-

---

2. The Trustee's complaint makes no mention of section 544. The complaint seeks to set aside the transfer under section 549 as an unauthorized postpetition transfer. The difficulty with this theory is that the Debtor did nothing after the filing to effect the transfer. The Trustee's belated reliance upon section 544 is in apparent recognition of the weakness of his section 549 case. Pedone does not object to the Trustee's failure to amend the complaint to assert a section 544

cause of action. I therefore treat this as a section 544 case.

3. New Hampshire Revised Statutes, section 304–A:8, provides in full as follows:

I. All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property.

ther the stipulation of facts nor the agreed set of exhibits indicates whether the Jackson property was acquired with partnership funds. Section 304–A:8 is therefore of no help.[4]

■ Except for the decision in *Parker v. Bowles*, 57 N.H. 491 (N.H.1876), discussed later, research discloses no relevant New Hampshire case law. General partnership principles, however, are enlightening. When the question involves only rights of the partners among themselves, the partners' intent is controlling on the ownership of property standing in the name of one or more partners without record reference to the partnership. *See* 1 Alan R. Bromberg and Larry E. Ribstein, *Partnership* § 3.02(a) (1997).

VER filed tax returns reporting the sales of the three condominium units by the partnership. So obviously these were partnership properties. The Jackson property was included in the mortgage securing the loan which financed the purchase of the condominiums and provided the partnership additional funds. The parties' stipulation states all three partners would testify that VER owned the Jackson property as well as the three condominium units. In light of all this, I find that the partners intended the Jackson property to be partnership property. It was therefore partnership property as among the partners themselves.

■ The intent of the partners is not controlling, however, as to a third party who purchases the property or takes a mortgage on it in reliance on record title. *See* 1 Alan R. Bromberg and Larry E. Ribstein, *Partnership* § 3.02(f) (1997). Here most courts

validate the third party's fee or mortgage interest. *See id.* New Hampshire is in accord. In *Parker v. Bowles*, 57 N.H. 491 (N.H.1876), two individuals entered into an oral agreement of partnership under which they included in the partnership certain real estate whose record ownership showed them as tenants in common without disclosure of the partnership. A lender gave credit to one of the partners and took as security a mortgage upon the partner's interest as tenant in common. The lender knew of the partnership and its control over part of the real estate, but it regarded the property as owned in tenancy in common and gave credit to the one partner on the strength of his record ownership. The Supreme Court of New Hampshire ruled that having relied on the tenancy in common with insufficient notice of the partnership's ownership, the lender held the mortgage free of the claims of the partnership's creditors.

### Trustee's Rights as Bona Fide Purchaser

Cases such as *Parker v. Bowles* involve the rights of third parties concerning transfers *into* a debtor which make no record disclosure of the interest of the partnership. That is unlike the unrecorded Pedone deed which was a transfer *from* a debtor. Does section 544(a)(3) give the Trustee bona fide purchaser rights with respect to transfers into a debtor? In other words, does it give a trustee the right to *effect* a transfer from a debtor into the bankruptcy estate? Or does a trustee have only bona fide purchaser rights to *avoid* transfers made *by* a debtor, such as the Pedone transfer?

---

II. Unless the contrary intention appears, property acquired with partnership funds is partnership property.

III. Any estate in real property may be acquired in the partnership name. Title so acquired can be conveyed only in the partnership name.

IV. A conveyance to a partnership in the partnership name, though without words of inheritance, passes the entire estate of the grantor unless a contrary intent appears.

V. All estates in real property acquired by a partnership and standing in the partnership name as of August 29, 1973, shall be valid without further act by the partnership or any of its members.

N.H.Rev.Stat Ann. § 304–A:8 (1997).

4. The Revised Uniform Partnership Act goes further on this question. It provides in part:

> Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes.

Revised Uniform Partnership Act § 204(d).

■ I begin, as I must, with the statute. Section 544(a), which is quoted in full in the margin,[5] provides that "[t]he trustee shall have ... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by [the creditor or purchaser described in subparagraphs (1), (2) and (3) ]." Subparagraph (3) refers twice to "such transfer," the second reference obviously being to the hypothetical transfer establishing the trustee's status as a bona fide purchaser. The first reference to "such transfer" is necessarily to the transfer spoken of before in the phrase "may avoid any transfer of property of the debtor." That is the only transfer previously mentioned. It also seems clear that a transfer "of property of the debtor" is a transfer made *by* the debtor; he is the only one who can transfer his property. Indicative too are the disjunctive "or" and the comma appearing between the grant of "rights and powers" and the grant of the ability to avoid a transfer. This demonstrates they are separate grants. And, significantly, subparagraph (3) describes the hypothetical bona fide purchaser only in terms of his right to avoid "such transfer," unlike subparagraph (1) and (2) which have no such confining reference to a transfer. I conclude from all this that the Trustee can only *avoid* a transfer of real estate previously made by the Debtor, such as the transfer to Pedone. The Trustee cannot *effect a* transfer from the debtor to the estate free of the interest of others in the Debtor's property.

The Seventh Circuit gave a different reading to the statute in *Belisle v. Plunkett,* 877 F.2d 512, 514–15 (7th Cir.), *cert. denied,* 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989), which also involved partnership real property with no record disclosure of the partnership's interest. Noting that the preamble to section 544(a) grants bona fide purchaser rights *or* the ability to avoid a transfer, the court concluded that a previous transfer by the debtor is not a necessary condition to the exercise of the trustee's bona fide purchaser rights. That is certainly true as to subparagraphs (1) and (2). But subparagraph (3) speaks of a transfer. The *Belisle* court unconvincingly dismissed this, stating: "The statute mentions "transfer" only in the sense of a *hypothetical* transfer that measures the trustee's rights. If a hypothetical bona fide transferee from the debtor would come ahead of the 'true' owner's rights, then the trustee takes ahead of the true owner." *Id.* at 515.

This tortures language and common sense. When section 544 speaks hypothetically there is express reference to the hypothesis. In dealing with a creditor in subparagraphs (1) and (2) and a bona fide purchaser of real property in subparagraph (3), the statute emphasizes the hypothetical existence of these parties with the phrase "whether or not such a [creditor or purchaser] exists." That is also so as to the second reference to a transfer in subparagraph (3). Surely Congress would have done the same in its first reference to a transfer in subparagraph (3) if this was intended to be a hypothetical transfer. And, again, the reference to "such transfer" is necessarily to the transfer which the preamble gives the trustee the right to avoid. Moreover, linguistics aside, trustees avoid real transfers, not hypothetical ones. It would be nonsensical for the statute to speak of the avoidance of hypothetical trans-

---

5. Section 544(a) provides as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
11 U.S.C. § 544(a) (1994).

fers. *See Mills v. Brown (In re Brown)*, 182 B.R. 778 (Bankr.E.D.Tenn.1995) (confining subparagraph (3) to avoidance of an actual transfer previously made by debtor); *In re Mill Concepts Corp.*, 123 B.R. 938, 941–42 (Bankr.D.Mass.1991) (same).

My interpretation is the same if we assume section 544(a)(3) is ambiguous. Subparagraph (3) first came into existence when the Code was adopted in 1978. There was no comparable provision in the prior Bankruptcy Act. The prior Act gave a trustee only the rights of a judicial lien or judgment creditor. *See* 11 U.S.C. § 110c. (repealed 1978). Subparagraph (3) has no legislative history beyond the unhelpful remark in the committee reports that it is "new." *See* H.R.Rep. No. 95–595, at 370 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6326; S.Rep. No. 95–989, at 85 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5871.

But there is indeed a history to subparagraph (3). For many years, the recording acts in a number of states have given protection only to bona fide purchasers of real property, so that in these states the holder of an unrecorded mortgage has priority over a judicial lien or judgment creditor. *See* 4 *American Law of Property* (A. James Casner ed., 1952) § 17.29. The ineffectiveness in these states of the trustee's status as a judicial lien or judgment creditor was therefore apparent under the prior Act. It was suggested that the trustee be armed with the powers of a bona fide purchaser of real estate so that he could prevail in all states over the holder of an unrecorded mortgage. *See, e.g.,* C. Robert Morris, *Bankruptcy Law Reform: Preferences, Secret Liens, and Floating Liens*, 54 Minn.L.Rev. 737, 760 n. 61 (1970). There appears to be agreement that this is the purpose of subparagraph (3) *See, e.g.,* Richard B. Levin, *An Introduction to* the Trustee's Avoiding Powers, 53 Am. Bankr.L.J. 173, 175–76 (1979); Lawrence P. King and Michael L. Cook, *Creditors' Rights, Debtor's Protection and Bankruptcy* 856 (1985); Douglas R. Rendleman, *Liquidation Bankruptcy Under the '78 Code*, 21 Wm. & Mary L.Rev. 575, 612 (1980); Thomas H. Jackson, *Avoiding Powers in Bankruptcy*, 36 Stan.L.Rev. 725, 738 (1984). That consensus seems correct. There is no hint anywhere of the statute having any other purpose. Indeed, no other purpose would have been consistent with the principal function of the "strong arm" clause—to invalidate unperfected security transfers.

There is more history. A comparison of section 544(a) to section 70c. of the prior Bankruptcy Act is suggestive. In giving a trustee only the rights of a judicial lien or judgment creditor, section 70c. did so in terms of "rights and powers," making no express reference to avoidance rights.[6] Yet the statute was of course used by trustees to avoid a debtor's defective security transfers. *See* 4B *Collier on Bankruptcy* §§ 70.56, 70.57, 70.58 (James Wm. Moore and Lawrence P. King eds., 14th ed.1978). Why then does the preamble to section 544(a) refer both to transfer avoidance rights and "rights and powers?" There is only one likely answer. This was apparently done to facilitate forming a link between the preamble and subparagraph (3) by means of having a reference in the latter to "such transfer," thereby restricting the subparagraph to the grant of transfer avoidance rights.

Confining subparagraph (3) to avoidance of transfers made by a debtor is supported by more than the statute's language and history. It also brings equity. As shall be seen in Part III, no unsecured creditor having a claim in this bankruptcy case could have

---

**6.** Section 70c. provided in pertinent part as follows:

The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy ob-

tained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists. If a transfer is valid in part against creditors whose rights and powers are conferred upon the trustee under this subdivision, it shall be valid to a like extent against the trustee.
11 U.S.C. § 110c. (repealed 1978).

obtained a judicial or judgment lien on the Jackson property which would place him ahead of Pedone. Unsecured creditors are the Trustee's constituency. To make the Trustee a tenant in common produces an unjustifiable bankruptcy windfall for that constituency.

Not just a debtor's partners are subject to the inequity that would result if a trustee's bona fide purchaser rights are expansive. There are many situations where the beneficial ownership and record title of real property do not coincide. This is often at the request of the beneficial owner. For example, in *Mills v. Brown (In re Brown)*, 182 B.R. 778 (Bankr.E.D.Tenn.1995), a lady wished to purchase land near her residence and to protect her privacy in so doing. Under a written agreement with her lawyer acknowledging her ownership, which was not recorded, the lawyer took title in his name alone. He later went into bankruptcy and the trustee claimed ownership of the property. The court ruled against the trustee. It relied in part on section 541(d), which keeps out of the bankruptcy estate the beneficial ownership of property to which the debtor has only legal title. *See* 11 U.S.C. § 541(d) (1994). Disagreeing with *Belisle v. Plunkett*, the court gave section 544(a)(3) the same interpretation given here, for the same reasons.

Section 541(d) provides further support for this interpretation of section 544(a)(3). Keeping the beneficial interests of others out of the bankruptcy estate harmonizes the two statutes. The decisions, unfortunately, are in disarray on this point. *See Brown*, 182 B.R. at 780 (discussing conflicting case law).

To be sure, subparagraph (3) applies to "any transfer of property," not just to the security transfers which were its motivation. This was perhaps done in order to be certain that the trustee has priority over mortgagees in so-called "title" states as well as "lien" states. *See* 4 *American Law of Property* § 15.14 (1952). Whatever the reason, subparagraph (3) covers outright transfers by a debtor as well as security transfers. A number of decisions so hold, testing the validity of conveyances under state law requirements governing deed formalities and recording.

*See, e.g., McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982); *Elin v. Busche (In re Elin)*, 20 B.R. 1012 (D.N.J.1982), *aff'd*, 707 F.2d 1400 (3d Cir.1983); *Iowa–Missouri Realty Co. v. United States Small Business Administration (In re Iowa–Missouri Realty Co.)*, 86 B.R. 617 (Bankr.W.D.Mo.1988); *D & F Petroleum v. Cascade Oil Co. (In re Cascade Oil Co.)*, 65 B.R. 35 (Bankr.D.Kan.1986); *Clark v. Kahn (In re Dlott)*, 43 B.R. 789 (Bankr.D.Mass.1983); *Loup v. Great Plains Western Ranch Co. (In re Great Plains Western Ranch Co.)*, 38 B.R. 899 (Bankr.C.D.Cal.1984). *See also, McAllester v. Aldridge (In re Anderson)*, 30 B.R. 995 (M.D.Tenn.1983), where the court was so disturbed by the unjust enrichment caused by application of section 544(a)(3) to the debtor's defective attempt at a transfer (an improperly acknowledged deed) that it imposed a constructive trust upon the property *after* the avoidance.

In sum, neither the wording nor the purpose of subparagraph (3) permits the Trustee to *effect* a transfer of the Jackson property from the Debtor to the estate free of the rights of others under the partnership or liquidation agreement.

## III. TRUSTEE'S RIGHTS AS JUDICIAL LIEN OR JUDGMENT CREDITOR

■ The Trustee fares no better through the exercise of his powers as a judicial lien or judgment creditor under subparagraph (1) or (2). It is true that the Trustee is not here confined to avoidance of a transfer made by the Debtor. But there appears to be only one instance in state law where, in the absence of a transfer by a debtor, a judicial lien or judgment creditor of the debtor takes priority over parties having an interest in the debtor's property. If an owner of goods consigns them to one who deals in goods of that kind and who is not generally known as a consignee, without public notice of the consignment, creditors of the consignee may obtain priority in the goods over the owner-consignor. *See* U.C.C. § 2–326. This is because of the presumed reliance by creditors upon the inventory apparently owned by the debtor at the time of credit extension.

Generally, a judicial lien or judgment creditor acquires only his debtor's interest in property. Take, for example, the situation where property is subject to an undisclosed constructive trust, a situation analogous to our case of property subject to an undisclosed partnership interest. In these circumstances, outside of bankruptcy[7], the constructive trust claimant prevails over the judicial lien creditor. *See Restatement of Restitution* § 160 cmt. f, § 173 cmt. j (1937). But because of his reliance, a bona fide purchaser or security interest holder enjoys priority of the beneficiary of a constructive trust. See *Restatement of Restitution* § 160 cmt. g, § 173 cmt. j (1937); 5 Austin Wakeman Scott and William Franklin Fratcher, *The Law of Trusts and Trustees* § 462.4 (4th ed.1989).

Turning to our question of an undisclosed partnership interest, I read *Parker v. Bowles* to require reliance by the creditor on record title if he is to prevail. The creditor there held a mortgage. The court emphasized that the creditor "gave credit to [the debtor] on the strength of his ownership of an undivided half...." *Parker v. Bowles*, 57 N.H. at 497. The hypothetical judicial lien or judgment creditor envisioned in subparagraphs (1) and (2) obtains his lien following credit extended on an unsecured basis. Experience tells us that unsecured credit is normally granted without reliance upon the debtor's record title to property. That is why judicial lien creditors take subject to an undisclosed constructive trust. An undisclosed partnership has no lesser rights.

In his role as a hypothetical judicial lien or judgment creditor, the Trustee has rights, but they are restricted. He does not have a lien on the Jackson property. *See* N.H.Rev.Stat.Ann. § 304–A:25(c) (1997). The most a nonpartnership creditor of the Debtor could do was to obtain judgment and thereafter have a court either (i) enter an order charging the Debtor's interest with payment of the unsatisfied judgment, or (ii) appoint a receiver to receive the Debtor's share of any sums due him under the partnership. *See* N.H.Rev.Stat.Ann. § 304–A:28 (1997).

These rights are worthless because of the partners' agreement to distribute VER's only remaining property to Pedone.

## IV. SUMMARY

The Trustee has the right to avoid the transfer to Pedone represented by the deed which was unrecorded at the time of the bankruptcy petition. But upon avoidance the Trustee is then left with only the Debtor's interest in partnership property. His rights as a bona fide purchaser of real property do not transfer the Jackson property to the estate free of the agreement made among the partners to dissolve and liquidate the partnership by transferring the Jackson property to Pedone alone. Yet the deed to Pedone accomplished just that. Thus there is no practical reason to avoid the transfer accomplished by that deed. In the final analysis, the transfer to Pedone and his subsequent sale of the property should not be disturbed.

---

**7.** In bankruptcy, because a constructive trust is not a true trust and the "beneficiary" holds the right to an equitable remedy, constructive trust rights are only a claim which is assigned a dollar value and deprived of any pretension to a property interest. *See CRS Steam, Inc. v. Engineering Resources, Inc. (In re CRS Steam, Inc.)*, 225 B.R. 833 (Bankr.D.Mass.1998).